# DUNN v. CHICAGO, INDIANAPOLIS AND LOUISVILLE RAILWAY COMPANY.

[No. 9,199. Filed January 23, 1917.]

1. RAILROADS.—*Construction.—Watercourses.*—Although a railroad
company is by the statutes (§5195, cl. 5, Burns 1914, §3903 R.
S. 1881, and §7683 Burns 1914, Acts 1905 pp. 521, 532) authorized
to construct its road across any stream of water, they are re-
quired to restore and maintain it substantially in its former
condition and in such manner as not to unnecessarily impair
its usefulness, and any such company failing to do so is liable
in damages to any person injured thereby. . p. 557.

2. RAILROADS.—*Protection of Right of Way.—Obstruction of Sur-
face Water.*—A railroad company has the right to employ all
necessary methods which it deems expedient to prevent surface
water from flowing onto and across its right of way without
being liable for the damage done thereby. p. 557.

3. RAILROADS.—*Protection of Right of Way.—Obstruction of Nat-
ural Watercourse.—Liability.*—A railroad company in the con-
struction and maintenance of its road over a natural water-

course must exercise due care not to obstruct the natural flow thereof, including not only such rises of high water as are usual and ordinary but also floods due to natural causes, such as an ordinarily prudent person should reasonably anticipate, considering the topography of the country, character of the soil, climatic conditions and all other conditions and circumstances apparent to a person of usual foresight and experience. p. 557.

4. WATERS AND WATERCOURSES.—*Natural Watercourse.—Obstruction of Flood Channel.—Liability.*—Where a riparian owner obstructs the flood channel of a stream he is liable to respond in damages to any one injured. p. 558.

5. RAILROADS.—*Obstructing Natural Watercourse.—Flood Waters.—Liability.—Instruction.*—In an action against a railroad for damages caused by the obstruction of flood waters of a natural watercourse, it was error to instruct the jury that it is not the legal duty of a railroad company to make openings through its track large enough to prevent the accumulation of water on the up-stream side, but it is only required to make its opening large enough to take care of the water which will flow within the bed of a watercourse. pp. 558, 560.

6. RAILROADS.—*Crossing Natural Watercourse.—Rights.*—The rights of a railway company crossing the bed of a natural watercourse are not the same as those of a proprietor of land in regard to surface water. p. 559.

7. RAILROADS.—*Obstructing Natural Watercourse.—Flood Waters.—Duty of Railroad.*—A railway company constructing its road across a stream and erecting an embankment and culvert is required to consider conditions manifest at other times of high water, the changes in the surrounding territory and the volume of water which would probably flow through the stream during flood times, and must provide ample accommodations for the free passage of all such waters through its right of way at all seasons of the year. p. 560.

8. RAILROADS.—*Obstruction of Natural Watercourse.—Action.—Pleading and Proof.—Evidence.*—Where, in an action against a railroad company for damages for obstructing a natural watercourse it was not the theory of the complaint that there were any permanent injuries to the property involved although it was alleged that the flood waters impaired plaintiff's store building to the extent of $1,000, it was proper to permit proof of the cost of repairs, but offered testimony tending to prove permanent injuries was properly excluded. p. 560.

9. RAILROADS.—*Obstruction of Natural Watercourse.—Action.—Measure of Damages.*—In an action against a railroad company for damages from overflow of flood waters due to the obstruction of a natural watercourse, plaintiff may show the damage to

his property by proving the loss of its rental value, where the complaint proceeds upon the theory that the nuisance is abatable, since, when the nuisance is abated, the damages recoverable are only such as have accrued prior to the action. p. 560.

From Monroe Circuit Court; *Robert W. Miers,* Judge.

Action by Charles C. Dunn against the Chicago, Indianapolis and Louisville Railway Company. From a judgment for defendant, the plaintiff appeals. *Reversed.*

*Ira C. Batman, Robert G. Miller* and *James W. Blair,* for appellant.

*E. C. Field, C. C. Hine* and *J. E. Henley,* for appellee.

IBACH, P. J.—This was an action for damages on account of the overflow of appellant's property occasioned by the alleged negligence of appellee in obstructing a natural watercourse. There is also a prayer that the alleged nuisance be abated. A trial resulted in a verdict and judgment for appellee. The material facts of the case are not controverted. The questions to be determined therefore are questions of law.

Appellant owns certain lots in the town of Stinesville, upon one of which there is a store building. Appellee's railroad runs north and south through the town along Railroad street, which is 100 feet wide. The railroad occupies about forty feet of the street, and about twenty feet along the east side is used for general travel. Appellant's lots face the west and abut on this portion of Railroad street and lie between Spring street on the south and Main street on the north. A stream of water flows down Spring street from the east; thence into Railroad street, and from there it flows in a northwesterly direction under appellee's tracks and road-bed through a culvert. This stream has its source in a spring about one mile to the east of the town, but before it reaches Railroad street a number of other springs flow into it, draining about 400 acres of rough and broken land and the stream is between 150 and 200 feet higher at its source than it is at Railroad street. After rains the water

flows down the stream with a rush. Appellee graded its road-bed along Railroad street between Spring street and Main street to a width of forty feet and a height of thirteen feet. Some time prior to 1874 an open wooden culvert ten or twelve feet wide was washed out and appellee or its predecessor replaced it with the one in question, which is built of stone and is three feet and six inches wide by five feet and one inch deep. About the year 1892 appellee or its predecessors constructed a switch, which appellee has since maintained, from its main line in Railroad street, extending southeast from a point south of the culvert, which switch entirely obstructs two other watercourses that crossed appellee's right of way to a creek beyond, and thereby the waters from these streams were turned down Railroad street to Spring street where they met the other waters which flowed down that street and then passed on through the culvert. After a hard rain of an hour or more, the culvert always failed to carry off the water, and as there was no other means of escape, it backed up over a portion of the town, including appellant's premises, and oftentimes raised as high as appellee's grade. The first overflow testified about occurred in 1875, others in 1896, 1904, 1906, and two in 1912, all of much the same character and causing similar damages to those described in appellant's complaint, which covered the overflow of 1912. On all such occasions the water which was backed up by the grade and insufficient culvert passed off with the other waters of the stream just as rapidly as the size of the culvert would permit. The evidence also shows the nature of appellant's injury to his store building and to the vacant lot. It also shows the amount of money necessary to make the repairs required to restore the building substantially to its former condition. There was evidence also tending to show the depreciation in the rental value of the building occasioned by the flood, as well as the depreciation of the rental value of the lot, not improved, occasioned by the flood water.

It is clear that appellee and its predecessors recognized the stream in question to be a natural watercourse, as that term is used in the law, by first constructing the open wooden culvert and then when that was washed away by erecting another more substantial in character to enable its railway to pass over such stream. It is also apparent from the record that both parties tried the case on that theory, and the uncontradicted evidence supports that theory. The statutes of this state give to railroad companies the

1. right to cross a stream of water, but they are also required by the same statutes to restore and maintain it substantially in its former condition and in such manner as not to unnecessarily impair its usefulness. Any such company which neglects or wilfully fails so to do is liable in damages to any person injured thereby. §5195, cl. 5, Burns 1914, §3903 R. S. 1881; §7683 Burns 1914, Acts 1905 p. 521, 532. *Vandalia R. Co.* v. *Yeager* (1915), 60 Ind. App. 118, 110 N. E. 230.

The right of a railroad company to employ all necessary methods as it deems expedient to prevent surface water from flowing onto and across its right of way, just

2. as an individual has the right to take such necessary measures as he may deem expedient to turn surface water from his premises without being liable for the damage done by such water, the flow of which has been thus obstructed, is too well recognized to require the citation of authority.

The law is also well recognized that a railroad company in the construction and maintenance of its road over a natural watercourse must exercise due care not to

3. obstruct the natural flow of the watercourse and this includes not only such rises of high water as are usual and ordinary but also floods due to natural causes, such as an ordinarily prudent person should reasonably anticipate, considering the topography of the country,

character of the soil, climatic conditions and all other conditions and circumstances apparent to a person of usual foresight and experience. As was said by the Supreme Court of this state: "It was incumbent on appellant, in the construction of its road, * * * to take notice of this character of the country, and provide ample accommodations for the free passage of the waters over its right of way at all seasons of the year." *New York, etc., R. Co.* v. *Hamlet Hay Co.* (1897), 149 Ind. 344, 352, 47 N. E. 1060, 49 N. E. 269. See also 40 Cyc 574. Neither can the flood channel of a stream be obstructed by a proprietor

4. without his being liable to respond in damages to anyone injured thereby. *Clark* v. *Guano Co.* (1907), 144 N. C. 64, 56 S. E. 858, 119 Am. St. 931.

Notwithstanding the evidence in this case and the rules of law applicable thereto, the court gave the following instruction: "In a case of this kind it does not neces-

5. sarily follow that because damage was done on account of overflow that a railroad company is liable therefor. It is not the legal duty of a railroad company to make openings through its tracks large enough to prevent the accumulation of water on the upstream side. A railroad company under such conditions is only required to make its opening large enough to take care of the water which will flow within the bed and banks of a watercourse and when it has done this it has performed its legal duty. So in the case at bar, if you find from the evidence that there was a small watercourse crossing defendant's right of way in Stinesville, which was sufficient to accommodate the water which would flow within the bed and banks of this watercourse and at the time the damage complained of was done, there was a heavy down-pour of rain which caused the water to rush down from the nearby hills in great quantity and overflow the banks of this small watercourse and in that way accumulate on the upstream side of defendant's railroad grade and that the damage to plaintiff's property

was done by this water overflowing said banks, your verdict in this case should be in favor of the defendant.''

This instruction is not in harmony with the evidence and with our view governing this case. Our courts, in the cases heretofore cited have fully discussed and determined what shall constitute surface waters, and we see no reason for disturbing the conclusions already reached. It is sufficient to say that, under these holdings, the rights of appellee are not such as a proprietor may have in surface water.

The parties treated the stream in question as a natural watercourse, and the evidence shows without contradiction that the waters which caused the injury to appellant's property was the overflow of such watercourse at a time of ordinary flood. It was not water which had become separated from the main stream so as to prevent its return. It was overflow water, it is true, which had passed over the low-water banks of the stream; yet it, at all times, was inseparably united with the water which remained within such banks but was simply held back until it, like the other water of the stream, might escape through the culvert; and the evidence shows that it did pass through with the remaining water of the stream as rapidly as the size of the culvert would permit. It is apparent that a larger culvert would have rendered the embankment harmless to appellant's lots, and the failure to make it of sufficient size enabled the embankment to force flood waters to flow back over and upon appellant's lots until such time as all the waters of the stream might flow through the opening provided for that purpose. It is also clear that the facts surrounding the rise in question were similar to the facts attending many other floods of the same stream after heavy rains.

Appellee was required when erecting the embankment and culvert complained of to take into account the conditions manifest at other times of high water. They were required to take note of the changes in the surrounding

territory and of the volume of water which would probably flow through this stream during flood times, in view of all the conditions of which it was required to take notice, and then to provide ample accommodations for the free passage of all such waters through its right of way at all seasons of the year. The undisputed evidence is that the accumulated water which damaged appellant's property was on the up-stream side of the embankment, and, as the jury was compelled to follow the instructions of the court, it was therefore, in view of this record, error to instruct that: "It is not the legal duty of a railroad company to make openings through its track large enough to prevent the accumulation of water on the up-stream side."

It becomes unnecessary for us to discuss at length other errors assigned. It is sufficient to say that we are of the opinion that the complaint does not proceed upon the theory that there were any permanent injuries to the real estate through the effect of the flood waters, although this averment is used in the complaint: "It permanently impaired the said store building to the extent of $1,000 for repairs." Hence, when appellant was permitted to make proof of the cost of these repairs he was proving the apparent theory of his complaint, and the offered testimony tending to prove permanent injuries was properly excluded. The complaint proceeds also upon the theory that the nuisance was abatable.

Appellant was permitted to show the damages to his lots by proving the loss to the rental value thereof. We think the trial court adopted the proper rule for ascertaining appellant's damages. In the consideration of a similar case this court said: "It is the settled law in this state as applied to actions of this character that when the injury is of such a nature as to be abatable, by the expenditure of either labor or money, the law will not presume its continuance, and that when from the nature of the

case the injury is removed, the injurious consequences will cease the damages recoverable from the wrongdoer are only such as had accrued before action was brought." *Southern R. Co.* v. *Poetker* (1910), 46 Ind. App. 295, 91 N. E. 610.

We are also of the opinion that the instruction tendered by appellant and refused was, so far as it had to do with the issues, substantially covered by others given.

Appellant's motion for a new trial should have been sustained. Cause reversed; new trial ordered.

Batman, J., not participating.

NOTE.—Reported in 114 N. E. 888. Waters and watercourses, liability of railroad company, (a) for interference, by construction of road on land acquired for right of way, 19 Ann. Cas. 336; (b) for conducting surface water through embankments onto lands of adjoining owner, 12 L. R. A. (N. S.) 680. As to right to accelerate or diminish flow of water by means of dams, bridges, etc., 85 Am. St. 708; 40 Cyc 571. See under (1) 40 Cyc. 645; (2, 4, 6) 40 Cyc 574; (8) 40 Cyc 581.