CLEVELAND, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY *v.* WOODBURY GLASS COMPANY.

[No. 9,614. Filed October 16, 1918. Rehearing denied December 20, 1918. Transfer denied June 29, 1923.]

1. APPEAL.— *Review.— Harmless Error.— Ruling on Demurrer to Answer.—Facts Provable under General Denial.*—Error, if any, in sustaining a demurrer to a paragraph of answer was harmless, where all the facts, alleged therein were provable under the general denial, and in fact were proved. p. 304.

2. APPEAL.— *Review.— Verdict.— Answers to Interrogatories.— Effect of General Verdict.*—In determining whether the overruling of a motion for a judgment on answers to interrogatories, notwithstanding the general verdict was erroneous, the general verdict must be taken as a finding that the material averments of the complaint are true. p. 305.

3. WATERS AND WATERCOURSES.— *Natural Streams.— Construction of Drain in Channel.*—The construction of a tile drain in the bed of a natural watercourse, and the obliteration of a portion of its banks, does not change its character as a natural watercourse. p. 307.

4. JUDGMENT.—*Railroads.—Waters and Watercourses.—Conclusiveness of Decree in Drainage Proceeding.—Obstruction of Stream.—Liability of Railroad.*—Where a natural watercourse remained such, notwithstanding the construction of a tile drain in its bed, the drainage commissioners' report and the decree of the court as to the capacity of the drain did not relieve an intersecting railroad of either its common-law or statutory duty to provide sufficient openings in its embankment so that the waters of the stream could be carried off in time of flood. p. 308.

5. WATERS AND WATERCOURSES.— *Natural Streams.— Surface Waters.*—The water of a natural watercourse, which at times

of heavy rains overflows an artificial drain through which it is ordinarily conducted, without thereby creating a permanent surface channel with well defined bed and banks, does not necessarily become surface water by reason of such fact. p. 308.

6. WATERS AND WATERCOURSES.—*Natural Streams.—Channels.— Obstruction.—Liability.*—A natural watercourse may have not only an ordinary channel in which its waters usually flow, but also a high-water channel in which its flood waters flow during certain seasons of the year, and such high-water channel constitutes a part of the watercourse, which cannot be obstructed without liability for resulting damage. p. 309.

7. WATERS AND WATERCOURSES.— *Natural Streams.— Surface Waters.*—The water of a natural watercourse does not cease to be a part thereof and become mere surface water because it may overflow the ordinary channel of the stream, spread out over adjacent low ground, and flow for a distance without a defined channel before returning to and flowing in its usual confines; but where the water of a natural watercourse leaves its ordinary channel and spreads out over adjacent lands, running in different directions or settling in pools or flats, it ceases to be part of the stream, and becomes in effect surface water. p. 309.

8. WATERS AND WATERCOURSES.— *Natural Streams.— Surface Waters.*—Where a tile drain was constructed in the bed of a natural stream, the drain became the ordinary channel thereof, and whether at times of overflow flood water became mere surface water, or continued to be a part of such stream, must be determined by the same facts as would have been decisive had no drain been constructed. p. 310.

9. APPEAL.—*Review.—Ruling on Motion for Judgment on Answers to Interrogatories.—Matters Considered.—Presumptions.* —In determining on appeal the correctness of a ruling on a motion for judgment on the answers to interrogatories, the court must look alone to such answers, the pleadings and the general verdict; and every presumption is indulged in favor of the general verdict, and the answers can prevail over it only where the conflict between the two is such that no evidence possible under the issues can reconcile it. p. 310.

10. WATERS AND WATERCOURSES.— *Streams.— Floods.— Act of God.*—In a landowner's action for damages by overflow of a stream claimed to have been obstructed by defendant, to make an act of God available as a defense, there must be an entire exclusion of human agency from the cause that produced the injury, as an occurrence that is produced by the intervention of human agency is not an act of God. p. 311.

11. WATERS AND WATERCOURSES.— *Streams.— Floods.— Act of God.*—In an action for damage by obstruction of the storm waters of a stream, answers to interrogatories *held* not to show that an unprecedented flood was the sole proximate cause of the injuries complained of, so that the action could not be defeated on the ground that the damage resulted from an act of God. p. 311.

12. NEW TRIAL.—*Grounds.—Verdict in Excess of Prayer.*—The mere fact that a verdict is for an amount in excess of that asked in the complaint cannot be assigned as a cause for a new trial, where the facts stated and the evidence given entitled the party to recover the amount found. p. 312.

13. PLEADING.— *Aided by Verdict.— Recovery in Excess of Prayer.—Amendments Deemed Made.*—Where the verdict is for an amount in excess of that asked for in the complaint, but the facts stated and the evidence given entitled the party to recover the amount found, the demand in the complaint will be deemed to have been amended to meet the amount of damages proved and found. p. 312.

14. WATERS AND WATERCOURSES.— *Natural Stream.— Obstruction.—Floods.—Excessive Damages.*—In an action for damages by the obstruction of storm waters of a stream, a verdict of $5,500 *held* not excessive, there being nothing to indicate that the jury acted from prejudice, partiality or corruption. p. 312.

15. DAMAGES.—*Evidence.—Admissibility.—Injury to Business.*— In an action for damages resulting from the obstruction of a stream, causing a factory to suspend operations; evidence of average daily net profits was competent. p. 312.

16. WATERS AND WATERCOURSES.—*Obstruction of Stream.—Due Care.*—Where a railroad company built an embankment across a natural stream, it was its duty to use due care not to obstruct the flow of water. p. 314.

17. APPEAL. — *Review. — Verdict. — Evidence. — Sufficiency.* — Where there is some evidence to sustain every material averment of the complaint, the court on appeal cannot say that a verdict for plaintiff is not sustained by sufficient evidence. p. 314.

18. EVIDENCE.—*Admissibility.—Best Evidence.*—In an action for damages resulting from the obstruction of the waters of a natural stream, in the bed of which a tile drain had been constructed, the construction of the drain being only incidentally involved, one who had acted as commissioner in the construction of the drain could testify as to how it was built as against the objection that the records were the best evidence; nor was the admission of such evidence a collateral attack on the proceedings establishing the drain. p. 315.

19. EVIDENCE.—*Admissibility.—Best Evidence.*—In an action for damages resulting from the obstruction of the storm waters of a natural stream, in the bed of which a tile drain had been constructed, whether the drain had previously carried all the waters of the stream could be shown by a witness; the records of the proceedings establishing the drain not being the best evidence, as the fact in controversy could not have been determined in such proceedings.  p. 316.

20. APPEAL.— *Briefs.— Waiver of Error.— Admission of Evidence.*—Where appellant has failed to state what specific objections were made to the admission of evidence at the trial, or that any exception was taken to the rulings thereon, error, if any, in the admission of such evidence is waived.  p. 316.

21. APPEAL.—*Harmless Error.*—In an action for damages resulting from the obstruction of the storm waters of a natural stream by a railroad embankment, in which liability was dependent on negligence, regardless of notice, defendant company was not harmed by admission of testimony that the local railroad agent was told of the danger, especially where he merely agreed to report it.  p. 316.

22. EVIDENCE.—*Admissibility.—Expert Testimony.—Cost of Repairs.*—In an action for damages to a factory resulting from the obstruction of the flood waters of a natural stream, an expert of long experience and with a general knowledge of conditions, who examined plaintiff's factory before permanent repairs were made, could testify as to their reasonable value, though he was absent when the damage was incurred and temporary repairs were made.  p. 317.

23. EVIDENCE.—*Books of Account.—Best Evidence.*—In an action for damages resulting from the obstruction of the storm waters of a natural stream, causing a shutdown of a factory, plaintiff's president could testify as to the average net profits, as computed by him from an examination of the books and records of the company, although he was traveling in another country during part of the period on which the profits were computed.  p. 318.

24. APPEAL.— *Review.— Scope.— Waiver of Objections.—* In an action for damages resulting from the obstruction of storm waters of a stream, causing a shutdown of plaintiff's factory, defendant could not on appeal urge the objection that books and records showing net profits were not admissible, or were not of such sort as to permit oral testimony by plaintiff's president as to what they showed, where that was not the ground of objection below.  p. 318.

25. WITNESSES.—*Refreshing Memory.*—In an action for damages from the obstruction of the storm waters of a stream,

causing a shutdown of plaintiff's factory, plaintiff's president, in testifying to average net profits, could refresh his memory from a memorandum he transcribed from the books of the corporation. p. 318.

26. APPEAL.—*Briefs.*—*Waiver of Error.*—Failure of appellant to direct any proposition or point to alleged error in instructions waives the error, if any. p. 320.

From Randolph Circuit Court; *Jacob F. Denney*, Special Judge.

Action by the Woodbury Glass Company against the Cleveland, Cincinnati, Chicago and St. Louis Railway Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Frank L. Littleton* and *Macy, Nichols, Goodrich & Bales,* for appellant.

*Walter G. Parry* and *George H. Ward,* for appellee.

BATMAN, J.—This is an action by appellee against appellant to recover damages caused by an alleged obstruction of a natural watercourse. The complaint is in a single paragraph and alleges in substance, among other things, that appellee is the owner of certain land crossed by a natural watercourse, which flows from the south toward the north; that appellant is the owner of a right of way, lying immediately north of its said land, which crosses said watercourse at right angles; that many years prior to the alleged grievances, appellant constructed a railroad grade fifteen feet high for its main track, over its said right of way; that it constructed an archway of masonry through said grade where it crossed said watercourse, eight feet wide and ten feet high, which was of sufficient size to carry the water thereof if left unobstructed; that it so maintained its said grade and archway until about six years ago, when it widened its roadbed by constructing an additional grade to the same height on the south side thereof for a switch track; that in so doing it willfully,

negligently and unlawfully filled up the opening at the south end of said archway, and thereby completely obstructed said watercourse; that in the month of March, 1913, appellee was the owner of a large manufacturing plant situated upon its said land in which was located much valuable material, equipment and machinery; that in said month there was a heavy rainfall in the vicinity of said plant, which caused a large quantity of water to flow down said watercourse; that by reason of the obstruction of said archway by appellant in the construction of its additional grade, and its failure to provide a means for the passage of said watercourse thereunder, a large body of water was collected and dammed up on appellee's said land for more than thirty-six consecutive hours; that by reason thereof its said manufacturing plant was flooded with water, its material and equipment greatly damaged, and the progress of its work greatly delayed, to its damage in the sum of $7,000. Appellant filed a motion to make the complaint more specific, and also a motion to strike out parts of the same, both of which were overruled. Appellant then filed a demurrer to the complaint for want of facts, which was likewise overruled. It then filed an answer in two paragraphs, the first alleging in substance that the watercourse mentioned in appellee's complaint had been improved and converted into a public tile ditch, constructed under the order of the Randolph Circuit Court; that it was decreed that it would be sufficient to accomplish the drainage of the lands involved; that it was constructed by a drainage commissioner appointed by the court, and has ever since been a public tile drain; that it passes under appellant's right of way through the stone arch mentioned in appellee's complaint; that the embankment complained of therein in no way or manner injures or obstructs the said public tile ditch, and that appellee's alleged inju-

304    APPELLATE COURT OF INDIANA,

Cleveland, etc., R. Co. *v.* Woodbury Glass Co.—80 Ind. App. 298.

ries were the result of unusual floods, and the accumulation of surface water.

The second paragraph of answer was a general denial. Appellee filed a demurrer to appellant's first paragraph of answer for want of facts, which was sustained. The cause was submitted to a jury for trial, and a verdict was returned in favor of appellee for $5,500, together with answers to interrogatories submitted by the court. Appellant filed a motion for judgment in its favor on the answers to the interrogatories, notwithstanding the general verdict, which was overruled. Judgment was thereupon rendered in favor of appellee. Appellant filed a motion for a new trial, which was overruled. It now prosecutes this appeal, and in its assignment of errors alleges that the trial court erred as follows: (1) In overruling its motion to require appellee to make its complaint more specific; (2) in overruling its motion to strike out parts of the complaint; (3) in overruling its demurrer to the complaint; (4) in sustaining appellee's demurrer to its first paragraph of answer; (5) in overruling its motion for judgment on the answers to the interrogatories notwithstanding the general verdict; (6) in overruling its motion for a new trial. Of the errors so assigned appellant has waived the first, second and third by failing to state in its brief any propositions or points with reference thereto, and expressly states that it relies on the fourth, fifth and sixth for reversal.

With reference to the fourth assigned error it suffices to say, that if the facts alleged in appellant's first paragraph of answer constituted a defense, no reversible error was committed in sustaining a demurrer thereto, since all of such facts were provable under the general denial on file. *Jeffersonville, etc., Co.* v. *Riter* (1897), 146 Ind. 521, 45 N. E. 697; *Harness* v. *Steele* (1902), 159 Ind. 286, 64 N. E.

875. Moreover, if error was committed in ruling on the demurrer to the same, it would not be cause for reversal, as appellant was permitted to introduce evidence on the trial, under the general denial, of the proceedings relative to the establishment of said public ditch or drain, as well as of all other matters alleged therein. *Indianapolis Traction, etc., Co. v. Isgrig* (1914), 181 Ind. 211, 104 N. E. 60.

The fifth assigned error relates to the action of the court in overruling its motion for judgment on the answers to the interrogatories notwithstanding the

2. general verdict. In considering this question it should be borne in mind that the general verdict must be taken as a finding that the material averments of the complaint are true. It is therefore a finding that the stream in question is a natural watercourse, and that it was unlawfully obstructed by appellant to appellee's damage. Under these facts appellee was entitled to a judgment in its favor, unless the answers to the interrogatories are in irreconcilable conflict therewith, as appellant contends. The specific facts found by such answers, on which appellant bases its right to a judgment are substantially as follows: About the year 1900, a public county tile ditch was constructed down the valley involved in this action for a distance of about 6,000 feet, which passed under appellant's railroad at the place in controversy; that prior to that time there was a stream of water flowing down said valley and over the right of way of appellant's railroad, which was a living stream, supplied by water from springs; that said public tile ditch was of sufficient capacity to carry the water flowing down said valley, except at times of heavy rains or floods; that the said springs along the course of said public tile ditch flowed into said tile drain and down the course thereof inside the

tile; that there was no living stream upon the surface of the ground, after the construction of said public ditch, except at times of heavy rains and floods; that said ditch was filled rounding full, except for a distance of about 725 feet where it passed over the lands of Ludy, Litschert, and appellant; that the ditch was afterwards filled substantially full on the land of Ludy, but not on the lands of Litschert and appellant, which were not in cultivation; that there has since been no permanent channel cut along the course of said public ditch by the natural flow of water therein; that water has only flowed over the surface of the ground above said tile one to three times a year since the construction of the public tile ditch; that water did not flow over the surface of the ground owned by William D. Kizer, located below the railroad and near the mouth of the ditch, more than once each year since its construction; that the flood in question occurring in 1913 was unprecedented, the rainfall in the vicinity of the public tile drain being 8.94 inches; that the commissioners appointed by the court in said public tile ditch proceedings, made a report in which it was stated, that the drain to be constructed as reported, would be of sufficient capacity to carry, without overflowing, all the water which flows, or should flow along the route of said drain; that said report was approved and accepted by the court, and the drain was established by the judgment and decree thereof; that a constructing commissioner was appointed by the court to construct said tile drain, and such commissioner subsequently reported that he had constructed the same in accordance with the commissioners' report, and the plans and specifications therefor; that said report was approved and said commissioner discharged by the order of court; that the report of the commissioners, upon which said public tile ditch was constructed, contained the following

provisions:    "We further report that from stake 36 to stake 65 the proposed ditch is over and along the line of an old open ditch known as the John D. Summers ditch.   Said proposed ditch to be dug in the same channel as already located, and after the tile are placed in said ditch the same to be filled to a depth of not less than two feet; the same to be done by replacing dirt excavated and by grading in the old banks of the said open ditch, over and along the whole route of the proposed work; except as above specified the ditch shall be filled rounding full.   That under the stone arch where said ditch is located across the C. C. C. and St. L. R. R. (appellant's road) shall be placed sewer tile, same size as tile required and length same as arch."

That there was no order or provision made for an open channel or waterway above or over the tile in said public ditch, and appellee constructed a paling fence across the line thereof, with a base twelve inches wide; that said public tile ditch has continued as such from the time the same was so established and constructed by the Randolph Circuit Court down to the present time.

It appears to be appellant's contention that the establishment and construction of the public tile drain in the bed of the stream, and the obliteration of the greater portion of its bed and banks, as found by the answers to the interrogatories, destroyed its character as a natural watercourse, or made the tile drain the sole channel thereof, so that it was relieved of the duty, which had theretofore existed, of providing a surface passage for the water of such stream through its railroad embankment.   We cannot concur in this contention.   It has been held by this court that the construction of an artificial drain in a natural watercourse does not change its nature as such. *Schwartz* v. *Nie* (1902), 29 Ind. App. 329, 64 N. E.

619; *Walley* v. *Wiley* (1914), 56 Ind. App. 171, 104 N. E. 318; *Vandalia R. Co.* v. *Yeager* (1915), 60 Ind. App. 118, 110 N. E. 230. True, the facts in each of the cases cited disclose that the drains involved were private, instead of public as in the instant case, but the same principle of law is applicable, notwithstanding this difference.

If the natural watercourse still remained after the establishment and construction of the public tile drain as we have held, any report of the commissioners or decree of the court, with reference to the capacity or sufficiency of such drain, made in the proceedings therefor, or the absence therein of any provision for a surface channel for the flow of any portion of the water thereof, could not have the effect of relieving appellant of either its common-law or statutory duty with reference to such watercourse. Nor did the obliteration of the greater portion of the bed and banks of such stream, or the fact that after the construction of said tile drain, no living stream of water remained on the surface of the ground, except at times of heavy rains or floods, as found by the answers to the interrogatories, have such effect.

It is urged, in effect, that since the answers to the interrogatories find that the capacity of the public tile drain was sufficient to carry the water flowing down the valley in question, except at times of heavy rains or floods, that the water overflowing the same at such times must be considered mere surface water, against which appellant had a right to protect itself, and hence incurred no liability by obstructing its flow. The case of *Hart* v. *Sigman* (1903), 32 Ind. App. 227, 69 N. E. 262, is cited as an authority in support of this proposition, but we cannot accept it as such. In that case the statement is made, and evidently relied on by appellant, that in so far as certain waters were

too abundant to be carried by the public tile drain, they were mere surface waters. However, the water to which reference is there made was evidently surface water before it overflowed the drain, as appears from the connection in which the statement is made. We quote from page 232 of the opinion: "no actionable fault can be imputed to Kellner for thus protecting his own land from the *surface waters* so accumulated on the appellant's adjoining land. So far as *they* were too abundant to be carried by the public tile-drain, they were mere surface-waters, which Kellner had a right to ward out, * * *." (Our italics.) That case, therefore, does not support appellant's contention. It would be contrary to reason to hold, that the water of a natural watercourse, which at times of heavy rains overflows an artificial drain through which it is ordinarily conducted, without thereby creating a permanent surface channel with well-defined bed and banks, necessarily became surface water by reason of such fact.

The law recognizes that a natural watercourse may have, not only an ordinary channel in which its waters usually flow, but also a high-water channel in which its flood waters flow, during certain seasons of the year, or at times of heavy rainfall. Such high-water channel constitutes a part of the watercourse, and cannot be obstructed without liability to one injured thereby. *Dunn* v. *Chicago, etc., R. Co.* (1917), 63 Ind. App. 553, 114 N. E. 888. It is also well settled that the water of a natural watercourse does not cease to be a part thereof, and become mere surface water, because it may overflow its ordinary channel, spread out over adjacent low ground, and flow for a distance without a defined channel, before returning to and flowing in its usual confines. *Mitchell* v. *Bain* (1895), 142 Ind. 604, 42 N. E. 230; *Vandalia R. Co.* v. *Yeager, supra; Evansville, etc., R. Co.* v. *Scott* (1916),

310    APPELLATE COURT OF INDIANA,

Cleveland, etc., R. Co. *v.* Woodbury Glass Co.—80 Ind. App. 298.

67 Ind. App. 121, 144 N. E. 649.    But if the flood
water of a natural watercourse leaves its ordinary
channel, and spreads out over adjacent lands, running
in different directions or settling in pools or flats, it
ceases to be a part of the stream, and becomes in effect
surface water.    *The New York, etc., R. Co.* v. *Hamlet
Hay Co.* (1897), 149 Ind. 344, 47 N. E. 1060, 49 N.
E. 269; *Evansville, etc., R. Co.* v. *Scott, supra; Uhl* v.
*Railroad Co.* (1904), 56 W. Va. 494, 49 S. E. 378, 68
L. R. A. 138, 107 Am. St. 968, 3 Ann. Cas. 201 and
note.

After the public tile drain in question was construct-
ed, and the surface channel of the watercourse was in
a large measure obliterated, the artificial drain,
8, 9. which took the place of the bed and banks of
the stream, became the ordinary channel there-
of, and the water which overflowed the same was its
flood water.    Whether such flood water became mere
surface water, or continued to be a part of such stream,
must be determined by the same facts as would have
been decisive, had such artificial drain not been con-
structed and its original channel largely obliterated. It
should be borne in mind that in determining the cor-
rectness of a ruling on a motion for judgment on the
answers to interrogatories the court must look alone to
such answers, the pleadings and the general verdict;
that every presumption is indulged in favor of the gen-
eral verdict, and the answers to the interrogatories will
be permitted to prevail over it only in cases where the
conflict between the two is such that no evidence pos-
sible under the issues could reconcile it.    *Williams* v.
*Lowe* (1916), 62 Ind. App. 357, 113 N. E. 471.

Under the issues in this case the evidence may have
shown, that the water from the stream in question had
overflowed the public tile drain at intervals since its
construction; that at such times the flood water there-

MAY TERM, 1923.          311

Cleveland, etc., R. Co. *v.* Woodbury Glass Co.—80 Ind. App. 298.

from flowed down the same over and along the course of the tile drain, until the water flowing therein had subsided to such an extent, that said flood water could enter the same, and flow on down its course on the inside thereof. An examination of the record discloses that this assumption is fully justified. If such were the case the water overflowing said tile drain would be a part of such watercourse and not mere surface water. There are no answers to the interrogatories that contradict this possible state of facts, and hence appellant's motion for judgment on the interrogatories cannot be sustained on the theory that they show that appellant's embankment was only an obstruction to surface water.

It is further urged against appellee's right to recover in this action, that the answers to the interrogatories show that its alleged injuries were the result of an unprecedented flood, or what is commonly known as an act of God. It has been held by this court in a comparatively recent case, that before an act of God can be made available as a defense, there must be an entire exclusion of human agency from the cause that produced the injury, as an occurrence that is produced partially by the intervention of human agency is not an act of God within the meaning of the law. *Evansville, etc., R. Co.* v. *Scott, supra.* In this case the complaint alleges that appellant carelessly, negligently and unlawfully, completely and entirely, stopped up and obstructed the watercourse in question, so that the water thereof could not and did not flow through and under its grade and road bed, down its channel to its outlet. The general verdict is a finding in appellee's favor on this material averment. True, the answers to the interrogatories show that at the time appellant constructed the new grade on the south side of the main track, it placed under and through such new grade, at or near the level of the bottom of the

archway under the main track, a 24-inch culvert or pipe, and connected the same with the opening of said archway, but they do not show that such culvert or pipe was of sufficient capacity to prevent an obstruction of the watercourse by its said grade, nor do they show that such culvert or pipe was kept open for the free passage of water through the same. 40 Cyc 574; *Southern R. Co.* v. *Weidenbrenner* (1915), 61 Ind. App. 314, 109 N. E. 926. The answers to the interrogatories therefore do not show that the unprecedented flood was the sole proximate cause of appellee's alleged injuries. We'fail to find any ground on which to sustain appellant's contention, that the court erred in overruling its motion for judgment on the answers to the interrogatories notwithstanding the general verdict.

Appellant's sixth assigned error relates to the action of the court in overruling its motion for a new trial. One of the reasons urged in support of this motion is, that the damages assessed by the jury are excessive. In presenting this reason appellant contends that the jury was not authorized to include in its verdict any greater sum for certain specific items of damage than the complaint alleges was sustained on that account. This contention is not tenable. It has been held that the mere fact that a verdict is for an amount in excess of that asked in the complaint, cannot be assigned as a cause for a new trial in any form, in case the facts stated and the evidence given, entitled the party to recover the amount found. In such a case the demand in the pleading will be deemed to have been amended to meet the amount of damages proved and found. *McKinney* v. *State, ex rel.* (1889), 117 Ind. 26, 19 N. E. 613; *Noyes Carriage Co.* v. *Robbins* (1903), 31 Ind. App. 300, 67 N. E. 959; *Helms* v. *Appleton* (1908), 43 Ind. App. 482, 85 N. E. 733, 86 N. E. 1023. Appellant has also submitted a calculation by which it

Cleveland, etc., R. Co. *v.* Woodbury Glass Co.—80 Ind. App. 298.

has attempted to show that the total amount of damages proved is less than the amount assessed by the jury in its verdict. We cannot accept the amount shown by this calculation as conclusive against the amount found by the jury. There was evidence that the operation of appellant's plant was delayed for eleven days, and that the fair average of the net profits thereof was $377.76 per day of twenty-four hours. The amount of damage thus shown when added to the other specific items of which there was evidence, makes a sum at least equal to the amount found by the jury. Appellant, however, seeks to discredit the testimony of the witness, who gave the amount of the average daily net profits, by citing the fact that the testimony of the same witness shows, that the total net profits of appellee's plant for five separate periods, covering the time from December 28, 1912, to March 22, 1913, aggregate $20,209.58. It asserts that when the amount of the net profits for any one of such periods is divided by the number of days therein exclusive of Sundays, that it shows the largest daily average for any one period to be $312.78, and the average for the entire period to be only $263.15. It claims that these facts show conclusively that the amount of $377.76 cannot be correct. We do not believe that appellant's conclusion in this regard necessarily follows. It will be noted that the witness in question testified that the fair average of the net profits of appellee's plant was $377.76 per day of twenty-four hours. In giving the amount of net profits during the various periods between said dates which aggregated $20,209.58, the witness did not undertake to give the daily average, nor did he state whether the plant was operated continuously during such periods, or for twenty-four hours each day thereof. We would have no right to assume these facts in order to discredit his testimony, and thereby find that the damages as-

sessed are excessive.   There was direct evidence of appellee's average daily net profits.   Such evidence was proper.   *City of Terre Haute* v. *Hudnut* (1887), 112 Ind. 542, 13 N. E. 686.   The amount stated, when considered in connection with other items of damage of which there is evidence, constitutes some evidence to sustain the amount of damages assessed.   The record is not such as to induce the belief that the jury acted from prejudice, partiality or corruption.   Under these circumstances we would not be warranted in sustaining appellant's motion for a new trial on the grounds of excessive damages.   *Lauter* v. *Duckworth* (1897), 19 Ind. App. 535, 48 N. E. 864; *Southern Ind. R. Co.* v. *Davis* (1904), 32 Ind. App. 569, 69 N. E. 550.

Among the reasons assigned by appellant in support of its motion for a new trial are, that the verdict is not sustained by sufficient evidence, and is contrary to law.   Substantially all the questions presented under these alleged errors have been considered in passing upon the action of the court in overruling appellant's motion for judgment on the answers to the interrogatories notwithstanding the general verdict, and hence they need not be considered here.   It suffices to say that when appellant constructed its additional embankment across the valley in question, and over the natural watercourse which drained the same, it was its duty to use due care not to obstruct the flow of the water thereof.   In exercising such care it was its duty to consider the size of the stream, its history, the area and topography of the country drained thereby, the probable rainfall thereon, the existence of the public tile drain, its capacity and sufficiency to carry the water of the stream, not only at ordinary times, but on occasions of such freshets and floods as might reasonably be anticipated, and then construct its embankment in such manner as not to obstruct the watercourse.

There was some evidence tending to show that appellant had not discharged this duty, and to sustain every material averment of appellee's complaint. Under such circumstances we cannot say that the verdict of the jury is not sustained by sufficient evidence. *Marietta Glass Mfg. Co.* v. *Bennett* (1914), 60 Ind. App. 435, 106 N. E. 419. We find no ground on which to base a conclusion that the verdict is contrary to law.

Appellant also predicates error on the action of the court in admitting certain evidence over its objections. Complaint is made that the witness, Jacob E.

18. Hinshaw, was permitted to testify as to the manner in which the public drain through the ravine in controversy was constructed, thereby contradicting his report thereof as a commissioner, and the record of the proceedings of the Randolph Circuit Court. It is urged that this was error as the records are the best evidence, and that the admission of the evidence of the witness was, in effect, a collateral attack on such proceedings. In determining this contention it should be borne in mind, that this is an action for the obstruction of a natural watercourse, and not for a failure of the drain to carry the water thereof. Hence the establishment and construction of the drain was only incidently involved. Appellee had a right to show the manner in which it was constructed, as bearing on the existence and condition of the watercourse at the time of the alleged injuries. The fact that the witness had acted as a commissioner in the construction of said drain, and had made a report of the manner of its construction, would not preclude him from testifying on that subject, and if his testimony contradicted his report it might affect its weight, but not its competency. Nor would such evidence be, in any sense, a collateral attack upon the records of the Randolph Circuit Court, made in the proceedings under which said drain was estab-

lished and constructed. We therefore conclude there was no error in admitting the evidence in question.

Appellant contends that the court erred in admitting the evidence of the witness, Alonzo E. Ludy, to the effect that the artificial drain did not carry all the water of the watershed during all times of the year. It claims that the Randolph Circuit Court, in the proceedings to establish the drain had decreed it to be sufficient to carry all water that flows, or should flow in the ravine in controversy, and hence it was error to admit evidence to the contrary. Whether the drain had carried all of such water, prior to the injury in question, was a proper subject of inquiry. The fact involved was not, and could not have been determined in any decree made in the proceedings to establish the same, and hence was not the best evidence of the fact in question, as appellant contends. There was no error in admitting the evidence.

Appellant alleges in its motion for a new trial, that the court committed a number of errors in the admission of evidence by the witness, Michael L. Summers, but has waived all except one, by failing to state what specific objections were made to the admission of such evidence on the trial, or that any exception was taken to the ruling of the court thereon. *American Fidelity Co.* v. *Indianapolis, etc., Fuel Co.* (1912), 178 Ind. 133, 98 N. E. 709. The record shows that after the introduction of evidence, which tended to show that one Eastman was the agent of appellant at Winchester, Indiana, where appellee's plant is located, and that the witness had talked with him with reference to the condition at its plant caused by appellant's embankment, he was asked the following question: "Tell the jury what was said in those conversations had with Mr. Eastman concerning the question of handling the water situation east of your plant where

it crossed under the railroad?" Appellant's objection to this question being overruled, the witness answered as follows: "I told him they ought to fix that and have it changed; that it might cause us trouble, and that it had already caused us trouble, and he said I will report it to the proper officials." It is contended that the admission of this evidence was error for the reason, that it had not been shown that said Eastman was an agent or officer of appellant upon whom notice could be served that would bind it, or that he was a person who could bind it by his statements. Appellant's liability in this action is not dependent on any notice served on it by appellee, and hence the authority of said Eastman in that regard is wholly immaterial. As to the question of his authority to bind appellant by his statements, it is sufficient to note that the only statement attributed to him is, that he said he would report it to the proper officials. Appellant could not have been harmed by this statement. There was no reversible error in admitting the evidence in question.

Appellant also alleges in its motion for a new trial, that the court committed a number of errors in the admission of evidence by the witness, George E. Leggett. However, in accordance with the rules, our consideration will be limited to those on which propositions or points have been stated by appellant in its brief. It is contended that it was error to permit the witness to testify as to the cost of repairs to appellee's plant, caused by the flood in question while he was traveling in Europe. The record discloses that certain temporary repairs were made while the witness was in Europe, and that after his return certain permanent repairs were made. The witness did not testify to the cost of the temporary repairs made in his absence, but was asked what it was reasonably worth to make the permanent repairs, and answered "$264.45."

From an examination of the witness it appeared that he was a man of long experience in manufacturing glassware, had a general knowledge of the condition of appellee's plant prior to the flood in question, knew the effect that such a flood would have upon the same, made an examination of the plant upon his return from Europe, found a condition that would not have been caused by the ordinary operation of the plant, but such as a flood would produce. Under these circumstances the court did not err in permitting the witness to testify as to what it was reasonably worth to make the permanent repairs in question, notwithstanding the fact that he was absent in Europe at the time the flood in question occurred, and for several weeks thereafter.

It is also urged that the court erred in permitting the last named witness to testify as to the net profits of appellee from the operation of its plant from 23-25. February 22 to March 22, 1913, for the reason that he had testified that he was absent, traveling in Europe, during the last twenty-two days of such period. It appears that the witness based his evidence of the net profits of appellee during such period on facts ascertained from an examination of the books of appellee. It is well settled that where books, records, and papers, which might properly be used in evidence, are numerous or voluminous, it is competent for any qualified person who has examined them, to testify as to the result of such examination with regard to the subject under investigation. *Shover, Admr., v. Myrick* (1892), 4 Ind. App. 7, 30 N. E. 207; *Rogers v. State, ex rel.* (1884), 99 Ind. 218; *Hollingsworth v. State* (1887), 111 Ind. 289, 12 N. E. 490; *Culver, Admx., v. Marks* (1890), 122 Ind. 554, 23 N. E. 1086, 7 L. R. A. 489, 17 Am. St. 377; *The Equitable, etc., Ins. Co. v. Stout* (1893), 135 Ind. 444, 33 N. E. 623; *Chicago, etc., Co.*

MAY TERM, 1923. 319

Cleveland, etc., R. Co. *v.* Woodbury Glass Co.—80 Ind. App. 298.

v. *Wolcott* (1895), 141 Ind. 267, 39 N. E. 451, 50 Am. St. 320. This rule is especially applicable where the ultimate fact to be ascertained must be the result of a calculation, involving many transactions and numerous amounts. In such a case any other method would cause great loss of time, and tend to confuse rather than enlighten the jury. In this case the evidence in question involved the net profits of a large manufacturing plant for a considerable time. It is apparent that a large number of items and numerous transactions would be involved, and that a careful calculation, based on a proper theory, would be required, to arrive at a correct result. The witness testified that he was the president of appellee; that he had general supervision of its accounts and bookkeeping; that all of the matters entering into the same were submitted to him by reports for his approval or disapproval, but from March 1 to May 1, 1913, he had no actual supervision of the books of appellee, by reason of his absence in Europe. It thus appears that the matter under investigation was such as to warrant the trial court in concluding, that the rule stated was applicable, and that the witness was competent and fully qualified to make the requisite examination and calculation to ascertain the fact in question. Moreover, at the time the evidence was offered, appellant did not base its objection to its admissibility on the ground that the books themselves were not competent, or that they were not shown to be of such a character as to make the rule cited applicable, and hence such objections cannot now be urged. *Pittsburgh, etc., R. Co.* v. *Rogers* (1909), 45 Ind. App. 230, 87 N. E. 28; *Lucas* v. *State* (1910), 173 Ind. 302, 90 N. E. 305. Nor does the fact that the witness made a memorandum of his examination and calculation, and used the same to refresh his memory with

reference thereto, render such evidence objectionable. We find no error in the admission of the evidence in question.

Appellant bases its motion for a new trial in part on the action of the court in giving certain instructions, but has waived all of such alleged errors, except those relating to No. 8, given by the court on its own motion, and to No. 10, given by the court at the request of appellee, by failing to direct any propositions or points thereto in compliance with the rules. The former instruction relates to the liability of appellant for the alleged damage to appellee's plant, in case the jury finds that such damage was caused partly by the act of God, and partly by reason of the negligence of appellant in obstructing the natural watercourse by its embankment. This instruction was evidently based on the well-established rule on that subject as laid down in the case of *Evansville, etc., R. Co.* v. *Scott, supra,* cited in considering appellant's fifth assigned error. The instruction comes clearly within such rule and the court did not err in giving the same.

Instruction No. 10, given at the request of appellee, treats of appellant's liability in case the jury finds that there was an extraordinary heavy rainfall, which caused an unprecedented amount of water to flow down the natural watercourse, at the time appellee received his alleged injuries. Appellant in his propositions or points sums up its objection to this instruction as follows: "In effect the charge says, that it is negligent on the part of appellant to fail to construct through its grade a way for the passage of an unprecedented amount of water." While the instruction is not free from criticism, we do not believe the jury could have placed the construction on it for which appellant contends, or have been misled thereby, in the light of other instructions given on the same subject. The jury was

told by instruction No. 5 given at the request of appellant, that—"the defendant was not bound to anticipate and provide for an unprecedented flow of water, caused by an unprecedented flood or rainfall." And again by said instruction No. 8 given by the court on its own motion, the jury was told, that if it found from the evidence, "that the injury complained of by the plaintiff, was caused by an extraordinary flood, which could not have been foreseen and provided against, this would be an act of God for which there would be no human liability, and the plaintiff could not recover." For the reasons stated there was no error in giving the instruction.

The motion for a new trial contains other reasons in support thereof which are not considered, as appellant has waived the same by failing to make any specific reference thereto in his propositions or points, as required by the rules governing the preparation of briefs. *Buffkin* v. *State* (1914), 182 Ind. 204, 106 N. E. 362; *Merchants Nat. Bank* v. *Nees* (1915), 62 Ind. App. 290, 110 N. E. 73, 112 N. E. 904. We find no reversible error in the record. Judgment affirmed.

Caldwell, J., not participating.