WOODSMALL *v.* CARR TIRE COMPANY.

[No. 14,484. Filed March 30, 1933. Rehearing denied June 30, 1933. Transfer denied April 17, 1934.]

*Charles E. Henderson, Laurens L. Henderson,* and *Wray & Sullivan,* for appellant.

*William H. Thompson, Albert L. Rabb, Thomas D. Stevenson,* and *Ed K. Adams,* for appellee.

KIME, P. J.—Appellee was the owner of a tire and battery shop and automobile service station at the northwest corner of East Michigan Street (running east and west) and North Delaware Street (running north and south) in the city of Indianapolis. It was the lessee of the premises wherein said business was located.

Appellant bought an apartment building located on the corner of East Michigan and North Pennsylvania streets (one block west of appellee's store), and moved said building east on Michigan to Delaware, turned it in the intersection of Michigan and Delaware, moved it one block north on Delaware to North Street to a new location.

It was appellee's contention that access to its store was obstructed by the moving of the building and that its business was interrupted to its damage. Hence this suit and judgment in the sum of $2,000.00 for said alleged damage.

Trial was had by court, with the resultant finding and judgment in favor of appellee. There was a motion for a new trial, assigning as reasons therefor that the decision of the court is not sustained by sufficient evidence and is contrary to law, that there was error in the assessment of the amount of recovery, same being too large, and that the damages assessed by the court are excessive. This motion was overruled, which action is the only error assigned here.

Appellant sought to defend, and seeks to prevail in this court upon the theory that the moving of the building was licensed by the city of Indianapolis and that, thereafter, appellee suffered damage without legal injury.

The evidence shows that on or about November 3, 1926, certain bridging was laid completely across Michigan street for the purpose of moving the building in question. On the night of November 3d, the building was moved out into the street and started eastward on Michigan street. The evidence further shows that on the evening of November 6th the building crossed Pennsylvania street, still going east. From that time until the building was turned into Delaware street, Michigan street was closed to through travel. In mov-

ing the building the bridging was necessarily built ahead of it, and it was shown that this bridging obstructed the entrance to appellee's business, the entrance also being obstructed as the building approached and passed same. It was further shown that the building was "stuck" at the intersection of Michigan and Delaware streets for a period of seven days due to a breakdown and lack of necessary equipment. While the building was in the intersection, appellee's store was unapproachable from the south and east and traffic was excluded from the north and west by barricades erected by the city. Delaware street was blocked for travel from the time the bridging ahead of the building entered the intersection until November 25, 1926.

We think there can be no doubt as to appellant's rights in moving the building, as he did so pursuant to a permit granted him by the city, who in turn had the power and authority to grant such a permit by virtue of section 11188, Burns Ann. St. 1926. Appellant has thoroughly discussed this proposition and cited authorities in support thereof. However, we think the real question involved is whether or not the permit was sufficient to clothe appellant with the right and authority to obstruct the entrance to appellee's place of business without compensating it therefor. Appellant expressly admits that access by motor vehicles to appellee's place of business was partially and fully closed at divers times during the moving of the building, but contends that this was true of necessity, as the constituted authorities of the city of Indianapolis knew when the permit was granted to move the building.

In *Indiana Railway Co.* v. *Calvert* (1907), 168 Ind. 321, 80 N. E. 961, upon which case appellant places considerable reliance, the appellant utility used the streets as a common carrier, enjoying such use as a matter of

franchise and not as a matter of right. The appellant railway company brought suit against the appellee to recover damages occasioned to it by the moving of a house along one of the streets used by said company. The court, in discussing the power conferred by the legislature upon cities and towns for the control of their streets, held that the use of streets for the moving of buildings could be authorized by the city. It also acknowledged the existence of authorities holding that a municipal license would not prevent a recovery .by a person sustaining special damage, but refused to apply such holding to "cases wherein the council possesses the authority to determine the rights of the parties." In the Calvert case, it will be noted that the common council, by ordinance, attempted to place the burden of moving its wires to permit houses to pass upon a corporation which was itself using the street to transact the business of a common carrier as a matter of franchise and not as a matter of right. The court, referring to appellant railway company said ". . . without the sanction of law its own possession (of the street) would be a nuisance." (Our parenthesis.) We think it is clearly within the power of a city council to determine the rights of a franchise holder, but we question such power as respects the rights of an abutting land owner. That the learned judge in the Calvert case had in mind the undue invasion of private rights is evidenced by the following language: ". . . yet where the undertaking, *if done with municipal authority,* does not unreasonably obstruct public travel, *nor unduly invade private rights,* and the work is done with due expedition, it cannot be affirmed that a nuisance is thereby created." (Our italics.) Thus it is clearly evident that the court contemplated the invasion of a private right when such moving was done with municipal authority, and made such invasion an exception to the rule laid down.

We quote with approval from Elliott's Roads and Streets, (4th Ed.), vol. 2, p. 1086: "The acts that the legislature may authorize which would otherwise ██ constitute nuisances, are, in general, those which affect public highways, or public streams, in which all the people may be said to have an interest; and, although there is some apparent conflict among the decisions, we think the better rule, and the one sustained by the weight of authority, is that such authority exempts only from liability to prosecution or civil action at the instance of the state, and does not affect claims of private citizens for damages on account of special inconvenience or injury not suffered by the public at large." There are numerous cases cited in support of this statement, among which is the Indiana case of *Evansville* v. *Dick* (1857), 9 Ind. 433. See, also, 46 Corpus Juris, p. 674; 13 R. C. L., p. 139, point 17 and cases cited.

It is not our intention to detract from the decision in the Calvert case nor to whittle down by exception the underlying principle therein. What concerns us here is the determination of whether or not an abutter may be deprived of his right to damages occasioned by one who is using the street as a matter of franchise and not of right, by virtue of a municipal license. We find the case of *Ewbank et al., Trustees* v. *Yellow Cab Co. et al* (1925), 84 Ind. App. 144, 149 N. E. 647, very helpful in deciding this question. In that case the Common Council of the city of Indianapolis passed an ordinance authorizing the establishment of a taxicab stand in front of appellant's building. Appellees established such a stand at said place and appellant alleged that it interfered with the access to and the use of his property. Upon appeal this court held that the right of access to real property is a part of the property, and that interference with such access is an interference with

one's property rights. The court, referring to the ordinance, said: "As against the owner of the property to be affected by the establishing and maintaining of these taxicab stands, the said ordinance conferred upon the appellee's herein no right whatever." There is ample evidence from which the jury could find, as it did, that the obstruction to appellee's place of business was an unreasonable and undue invasion of its private rights, and we hold that the permit granted appellant by the city did not deprive appellee of its right to damages for such invasion.

We now come to the question of damages, which appellant claims are excessive. The evidence shows that for the four months prior to and the month subsequent to the moving of the building appellee had made an average profit of $1,007.17, and that during the month of November it lost $2.056.76. This showed a loss below average experience of $3,063.93. These figures, coupled with the showing that appellee's business was interfered with by the moving of the building, were competent and proper evidence for the court to have based its award upon. *Cleveland, etc., R. Co.* v. *Woodbury Glass Co.* (1918), 80 Ind. App. 298, 120 N. E. 426; *City of Terre Haute* v. *Hudnut* (1887), 112 Ind. 542, 13 N. E. 686. Appellee's profit and loss experience as set out above, was shown by its statements which were checked against its books. Appellant is here objecting to certain inventory figures contained in the statements referred to for the reason that no evidence was introduced as to their accuracy. However, the figures were properly in evidence and the objection goes only to their weight. That this court will not weigh the evidence is so well settled that a citation of authorities is unnecessary.

We find no error in the proceedings of the court below. Therefore, this cause is in all things affirmed.