### VANDALIA RAILROAD COMPANY *v.* YEAGER ET AL.

[No. 8,555. Filed November 18, 1915.]

1. WATERS AND WATERCOURSES.—*Obstruction of Surface Water.— Liability.*—A landowner without incurring liability therefor may in a proper manner erect at his boundary barriers to ward off surface water from his lands, but such rule does not extend to a case where a natural or prescriptive watercourse is obstructed or interfered with to the damage of another. p. 122.

2. RAILROADS.—*Construction.—Watercourses.*—The rules defining

the liability of landowners with reference to obstructing the flow of water apply also to a railroad company in improving, using or protecting its right of way, and though a railroad is by statute authorized to construct its road across any stream of water or watercourse, its interference with the free use of the stream, or failure to restore it to substantially its former state, renders the company liable to respond in damages to any one injured thereby.  p.  122.

3.  RAILROADS.—*Obstruction      of      Watercourse.—Complaint.—Sufficiency.—Easement by Prescription.*—A complaint against a railroad company for damages for the obstruction of water flowing across defendant's right of way through plaintiffs' land, which did not disclose that plaintiffs or their predecessors caused the water to flow across the right of way under a claim of right to do so, necessarily failed to show the adverse exercise of such a right, and was therefore insufficient on the theory of an obstruction of a prescriptive watercourse.  p.  123.

4.  RAILROADS.—*Obstruction of Natural Watercourse.—"Stream of Water."—"Watercourses."—Pleading.*—A complaint against a railroad company for damages charging the obstruction of water flowing across defendant's right of way through the land of plaintiffs, which alleged in effect the existence of a course through which water had flowed without interruption for a number of years prior to the injuries complained of, and characterized the same as a "running stream of water" and also as a "natural watercourse," by means of which the land of plaintiffs was drained, showed the obstruction of a natural watercourse; the distinction between a "stream of water" and a "watercourse" being shadowy and unsubstantial, while a "natural watercourse" is a channel cut by the force of its own running waters.  p.  123.

5.  RAILROADS.—*Obstruction of Natural Watercourse.—Evidence.—Liability.*—Where a railroad company constructed its track over the land of plaintiffs and across a natural watercourse running through such land, placing a culvert under the track sufficient to take care of the water without serious damage to the farm, which culvert was subsequently replaced by sewer pipe of capacity to carry the water except after heavy rains, and plaintiffs constructed underground tile drains under the track which alone carried the water of the stream except after heavy rains, when the water flowed down the line of the ancient channel to the sewer pipe, and, in so doing, recut the channel which plaintiffs had from time to time effaced by plowing and cultivating the land, and it was shown that eventually the railroad company constructed a sidetrack so as to obstruct the mouth of the sewer pipe and cause the land to be flooded, a finding that the company had obstructed a natural watercourse was warranted, since the construction of the tile drains did not change the character of the watercourse, though the only waters thereafter flowing therein were surface waters from rains, in view of the fact that all waters flowing within the limits of the

channel, though in part flood waters, were a part of the waters of the watercourse.    pp. 125 ,128.

6.   WATERS AND WATERCOURSES.—*Natural Watercourse.*—Where the face of the country is such as to collect in one body so large a quantity of water, after heavy rains and the melting of large quantities of snow, as to require an outlet to some common reservoir, and such water is regularly discharged through a well defined channel made by the force of the water, and which is the accustomed channel through which it flows, and has flowed from time immemorial, such channel is an ancient natural watercourse.   p. 127.

7.   WATERS AND WATERCOURSES.—*Natural Watercourse.*—*Obstruction.*—*Liability.*—Though 'a lower proprietor has no right to so construct a dam as to throw the water back on the premises of the upper proprietor in time of ordinary freshets, he is not liable for damages occasioned by extraordinary floods, against which ordinary skill and foresight would not provide, though the backing of the water is increased by such dam.   p. 129.

8.   RAILROADS.—*Obstructing Watercourses.*—*Measure of Damages.*—*Successive Actions.*—In an action against a railroad company for damages for obstructing a natural watercourse, on the theory of a continuing but temporary injury to plaintiff's land, the measure of damages, in the absence of allegations showing some special damages or a permanent injury, is the depreciation in the value of the use or the rental value of the land, and is limited to the period marked by the commencement of the action; but successive actions may be maintained for subsequent periods if the wrong and the injury continue, and where a supplemental complaint is filed recovery may be had to the time of its filing.   p. 130.

9.   WATERS AND WATERCOURSES.—*Obstruction.*—*Continuing Temporary Injury.*—*Damages.*—*Review.*—An assessment of damages in the sum of $900 for the obstruction of a natural watercourse so as to overflow the land of plaintiffs was excessive, and also erroneous on the ground of double damages, where the obstruction was a continuing temporary injury in existence one year prior to filing the complaint, and the sustaining of the judgment required the consideration of depreciation of the rental value for three ent're years, plus three years' interest on the estimated investment in the lands flooded.   p. 131.

From Superior Court of Marion County (83, 672); *Joseph Collier*, Judge.

Action by Louie Yeager and others against the Vandalia Railroad Company. From a judgment for plaintiffs, the defendant appeals. *Reversed.*

*Samuel O. Pickens, Owen Pickens* and *John G. Williams*, for appellant.

*W. S. Doan* and *J. C. Mathews,* for appellees.

CALDWELL, J.—Appellees brought this action to recover damages suffered by reason of appellant having constructed and maintained a sidetrack, the embankment of which obstructed the flow of water from appellees' farm. A trial resulted in a verdict for $2,000, from which appellees remitted $1,100, and judgment was rendered for the residue. The errors assigned are based on the overruling of the demurrer to the amended complaint, and on overruling the motion for a new trial. The points made under the latter assignment are the insufficiency of the evidence; that the verdict is contrary to law; an excessive recovery; and alleged error in giving instructions.

The substance of the amended complaint hereinafter referred to as the complaint is as follows: Appellees own an 86-acre tract of land in Marion County, used and cultivated by them as one farm for many years. The farm is crossed diagonally from northeast to southwest by appellant's right of way and track, so that twenty-eight acres of the farm are on the northwest side of the railroad. Prior to the grievances complained of, the 28-acre tract was drained through and by means of a running stream of water, which extended south and west intersecting appellant's railroad, where it crossed appellees' land. It is alleged that for more than twenty years, appellant and its predecessors maintained an outlet and crossing under its track for the water coming from the farm, which water ran along said stream, and under appellant's track through an outlet and way prepared for that purpose; that about eighteen months prior to the filing of the complaint, appellant negligently and without right obstructed the outlet by building a sidetrack and grade across

it, and thereby "entirely obstructed the natural flow of the water as the same flowed off plaintiff's land along said natural watercourse, as hereinbefore mentioned" and thereby dammed the water and caused the farm to be overflowed and flooded; that as a consequence, eight or ten acres of the twenty-eight acres are entirely under water; that by reason of the flooded condition of the land, it has become unproductive and untillable, and appellees have been, and are unable to cultivate it, and that certain described crops have been damaged and destroyed; that appellees a number of times requested appellant to remove the obstruction, but that it refused to do so; that appellees have been damaged in the sum of $2,000, for which judgment is asked.

Appellant contends that the complaint discloses that in constructing and maintaining its embankment and sidetrack on its right of way, it obstructed a mere surface water drain, rather than a natural or prescriptive watercourse, and that the complaint is therefore insufficient. If appellant is correct in its interpretation of the complaint, the demurrer thereto should have been sustained. By the decisions of the courts of appellate jurisdiction it has become a settled doctrine in this State, that a landowner without incurring liability therefor may in a proper manner erect at his boundary barriers to ward off surface water from his lands. This broad rule of nonliability however does not extend to a case where a natural or prescriptive watercourse is obstructed or interfered with to the damage of another. The rules that define the liability of landowners in the matter under discussion apply also and likewise to a railroad company in improving, using or protecting its right of way. *Clay* v. *Pittsburgh, etc.,*

*R. Co.* (1905), 164 Ind. 439, 73 N E. 904; *New Jersey, etc., R. Co.* v. *Tutt* (1907), 168 Ind. 205, 80 N. E. 420; *Guynn* v. *Wabash, etc., Light Co.* (1914), 181 Ind. 486, 104 N. E. 849. By statutory provision, a railroad company is authorized to construct its road across any stream of water or watercourse, so as not to interfere with its free use, but is required to restore such stream or watercourse substantially to its former state, and any neglect or wilful failure to do so makes it liable to respond in damages to any one injured thereby. §5195 Burns 1914, Acts 1911 p. 136; *Cleveland, etc., R. Co.* v. *Wisehart* (1903), 161 Ind. 208, 67 N. E. 993; *Graham* v. *Chicago, etc., R. Co.* (1906), 39 Ind. App. 294, 77 N. E. 57, 1055.

We proceed to determine whether the complaint presents a case of the obstruction of either a prescriptive or a natural watercourse. The complaint does not disclose that appellees or their predecessors caused the waters from their lands to flow across appellant's right of way under a claim of right to do so. It therefore fails to show the adverse exercise of such a right. These necessary elements of an easement by prescription are lacking, and the complaint is therefore insufficient on the theory of an obstruction of a prescriptive watercourse. *Mitchell* v. *Bain* (1895), 142 Ind. 604, 42 N. E. 230; *Cleveland, etc., R. Co.* v. *Huddleston* (1899), 21 Ind. App. 621, 52 N. E. 1008, 69 Am. St. 385; *Cleveland, etc., R. Co.* v. *Griswold* (1912), 51 Ind. App. 497, 97 N. E. 1030; *Gaskill* v. *Barnett* (1913), 52 Ind. App. 654, 101 N. E. 40.

On the subject of the nature of the watercourse which appellant obstructed, the only reasonable construction of which the complaint is susceptible is that it is thereby alleged in effect that for a number of years prior to the in-

juries complained of, a watercourse, in which water flowed without interruption, characterized by the complaint as a "running stream of water" and also as a "natural watercourse," traversed appellees 28-acre tract of farming land southward to and under appellant's railroad track, through an opening prepared for that purpose, and that by means of such watercourse, the lands traversed were drained. As used in some connections, "the legal distinction between the terms 'a stream of water' and 'a watercourse,' if any, is shadowy and unsubstantial." *New Jersey, etc., R. Co.* v. *Tutt, supra.* A stream of water is a current of water, a body of water having a continuous flow in one direction. 36 Cyc 1335. A watercourse is a channel cut through the turf by the erosion of running water, with well-defined banks and a bottom and through which water flows and has flowed immemorially, not necessarily all the time, but ordinarily and frequently for substantial periods each year. *New Jersey, etc., R. Co.* v. *Tutt, supra.* If a stream of water flows ordinarily and frequently in the same place through farming land, it must of necessity result that it will form for itself a channel with banks and a bottom, and if it flows without interruption, it must have a constant source of supply. Moreover, the complaint here designates the watercourse involved as a natural watercourse. If a natural watercourse, it has a channel cut by the force of its own running waters. Under authorities above cited, the complaint shows the obstruction of a natural watercourse. It follows that the court did not err in overruling the demurrer. See, also, *Ramsdale* v. *Foote* (1882), 55 Wis. 557, 13 N. W. 557 *Fisher* v. *Paff* (1899), 11 Pa. Super. Ct. 401; *Ward* v. *Ford* (1899), 58 S. C. 557, 36 S. E. 916.

In challenging the sufficiency of the evidence, ap-

pellant contends that it obstructed the flow of mere surface water, rather than the waters of a

5. watercourse. There was evidence to support the following facts: Appellant's railroad was built in 1867. At that time, a constantly flowing stream of water which arose at some point north entered on the lands now owned by appellees and traversed said lands southward in a permanent channel two or three feet deep and several feet wide. Appellant's predecessors recognized the existence of this stream by placing a culvert eight feet wide for its passage under the track. At periods of drouth the channel carried but little water. The stream was subject to overflow at times of freshets after rains, and under exceptional circumstances it became several rods wide. The culvert however accommodated the waters without serious damage to the adjacent lands. A number of years later, the railroad company removed the culvert, and placed in its stead a sixteen-inch sewer pipe, which proved to be sufficient to carry the water except after heavy rains, at which times the lands now owned by appellees were to some extent flooded. The landowner thereupon constructed two underground tile drains six and eight inches in diameter, from the south to the north side of the lands along the line of the stream, crossing under the railroad track near the sewer tile. The tile drains alone carried the water of the stream except after heavy rains at which times the surplus water ran down along the course of the stream and through the sewer pipe. Since the tile drains alone ordinarily carried the water, the landowner in farming plowed and cultivated the land across the channel, and thus filled it up. After heavy rains water flowed down the line of the ancient channel to the sewer pipe, and in so doing recut the channel, but at the next plow-

ing, it was again filled as before. In this manner, the stream was handled by appellees and their predecessors until May, 1910, when appellant built the sidetrack north of the main track, as described in the complaint and in so doing totally obstructed the mouth of the sewer pipe, by building the grade of the side track against it. As a consequence, appellees' lands north of the sidetrack soon became flooded and continued in that condition a large part of the time until the date of the trial. At times the water stood to the top of the grade of the sidetrack, and extended over fifteen to twenty acres of appellees' lands north of the track. Water flowed in the tile drains throughout the entire year, and they were overtaxed even at times of ordinary freshets.

Under these facts, appellant concedes that at the time of the building of the railroad in 1867, the stream was a natural watercourse within the meaning of that term as used in the law. Appellant contends, however, that the stream lost its identity as such by the act of the landowner in constructing the tile drains, and thus placing a part, and at times all of its running waters underground. It is argued in effect that since the tile drains were sufficient at times to carry the water, the overflow of the tiles was the result of rains or melting snow, and therefore mere surface water; that the sewer pipe therefore carried mere surface water, and that appellant as a consequence incurred no liability by obstructing its flow as indicated. If the situation here presented a natural watercourse, the construction of the tile drains along its course did not change its nature as such. *Walley* v. *Wiley* (1914), 56 Ind. App. 171, 104 N. E. 318; *Schwartz* v. *Nie* (1902), 29 Ind. App. 329, 64 N. E. 619; *Cleveland, etc., R. Co.* v. *Huddleston, supra*; *Wharton* v. *Stevens* (1891),

84 Iowa 107, 50 N. W. 562, 35 Am. St. 296, 15 L. R. A. 630; *Vannest* v. *Fleming* (1890), 79 Iowa 638, 44 N. W. 906, 18 Am. St. 387, 8 L. R. A. 277. It can not be successfully argued that only that part of the waters that flowed in the stream when it was at its lowest ebb constituted the exclusive waters of the watercourse, and that all other waters flowing in the channel as the result of rains were mere surface waters.   Certainly all waters that flowed within the limits of the channel although in part flood waters were a part of the waters of the watercourse.   Flood waters flowing without the ordinary channel are under some circumstances classed as a part of the stream rather than as surface waters. Thus it is recognized that waters overflowing the natural channel may flow down the course of the stream uniform in current with it, and at such regular intervals as to form what is known as a high-water channel, all the waters contained within it being classed as waters of the stream or watercourse, rather than as in part surface water. *New York, etc., R. Co.* v. *Hamlet Hay Co.* (1898), 149 Ind. 344, 47 N. E. 1060, 49 N. E. 269.   See, also, *Fordham* v. *Northern Pac. R. Co.* (1904), 30 Mont. 421, 76 Pac. 1040, 104 Am. St. 729, 66 L. R. A. 556; *Cairo, etc., R. Co.* v. *Brevoort* (1894), 62 Fed. 129, 25 L. R. A. 527, and note; 40 Cyc 639.

An origin from rains and melting snow is by no means an infallible guide in determining that a certain flow of water is mere surface water that may be dammed with impunity.   The Supreme Court states the following as the true rule: "If the face of the country is such as necessarily collects in one body so large a quantity of water, after heavy rains and the melting of large bodies of snow, as to require an outlet to some common reservoir, and if such water is regularly dis-

charged through a well-defined channel, which the force of the water has made for itself, and which is the accustomed channel through which it flows, and has flowed from time immemorial, such channel is an ancient natural watercourse." *Taylor* v. *Fickas* (1878), 64 Ind. 167, 175, 31 Am. Rep. 114. See, also, *Mitchell* v. *Bain, supra;* note to *Wharton* v. *Stevens, supra; Rait* v. *Furrow* (1906), 6 L. R. A. (N. S.) 157, note.

The jury was warranted in finding from the evidence that the capacity of the ancient channel was very much in excess of the two tile drains, and also 5. the existence of a high-water channel as a part of the watercourse. A channel and banks and bed are ordinarily classed as the surface indications of a natural watercourse. They are, however, but the indicia of a watercourse. The essential characteristics of a watercourse that give it recognition as such are substantial existence and unity, regularity and dependability of flow along a definite course so that if a stream traverses the land of adjoining proprietors, it may be identified and recognized as such. The usual marks of such a flow are channel banks and bed made by the action of the water. Under some circumstances, however, a stream is classed as a natural watercourse in the absence of a well-defined channel as that term is usually understood, as where the water through a part of its course spreads over a considerable breadth of land. See cases collected in *Case* v. *Hoffman* (1893), 84 Wis. 438, 54 N. W. 793, 36 Am. St. 937, 20 L. R. A. 40; *Harrington* v. *Demaris* (1904), 46 Or. 111, 77 Pac. 603, 82 Pac. 14, 1 L. R. A. (N. S.) 756, and note; 2 Farnham, Waters 1562; *Mitchell* v. *Bain, supra;* note to *Cairo, etc., R. Co.* v. *Brevoort, supra; Walley* v. *Wiley, supra.* Here originally there was, as indicated, a plain channel, with well-

defined banks. This channel, to an extent obliterated from time to time by human agency, was restored by the flowing waters at each freshet. Under such circumstances we believe that the stream remained a natural watercourse, even aside from the waters carried by the tile drains. Appellant obstructed the waters of such watercourse to the damage of appellees, and the evidence is therefore sufficient to sustain the verdict.

It being established that the stream here flowed in a natural watercourse, we would not be understood as holding that appellant is liable in damages for obstructing the waters flowing down against the embankment of its sidetrack, regardless of the circumstances or the unusual or unexpected quantities of such water. The rule that governs in such cases is thus expressed by the Supreme Court: "The lower proprietor has no right to so construct his dam as, in times of ordinary freshets, to throw the water back on the premises of the proprietor above; and if he does so, he is responsible for the damages. But he is not responsible for damages occasioned by extraordinary floods, against which ordinary skill and foresight would not provide, though the backing of the waters may be increased by the dam." *Bristol Hydraulic Co.* v. *Boyer* (1879), 67 Ind. 236, 243. See, also, 40 Cyc 682 and cases; *Sloss-Sheffield Steel, etc., Co.* v. *Webb* (1913), 184 Ala. 452, 63 South 518; *Palmyra* v. *Waverly Woolen Co.* (1904), 99 Me. 134, 58 Atl. 674; *Sloss-Sheffield Steel, etc., Co.* v. *Wilson* (1913), 183 Ala. 411, 62 South 802; *Brierer* v. *Hurst* (1893), 155 Pa. St. 523, 26 Atl. 742. The syllabus, in the following language, indicates the decision in the case last cited: "In an action by an upper against a lower riparian owner for obstruct-

ing a stream, thereby causing an overflow of plaintiff's lands, defendants are liable if the obstruction is such as to impede the usual flow of water or that caused by the ordinary freshets to which such stream is liable."

We agree with appellant in its contention that the damages assessed remain excessive after the remittitur. We agree with appellees, however, 8. in their interpretation of the complaint that it proceeds on the theory of a continuing but temporary injury to the land. The court's instruction to the jury were on that theory. While the sidetrack here is perhaps a permanent structure, its embankment need not remain in such a condition as to continue to inflict an injury on appellees by flooding their lands. In such an action, in the absence of allegations showing a permanent injury to the land, or some special damages, the recovery is measured by the depreciation in the value of the use or the rental value of the land, and is limited to the period marked by the commencement of the action. Successive actions, however, may be maintained for subsequent periods if the wrong and the injury continue. *Baltimore, etc., R. Co.* v. *Quillen* (1904), 34 Ind. App. 330, 72 N. E. 661, 107 Am. St. 183; *Cleveland, etc., R. Co.* v. *King* (1900), 23 Ind. App. 573, 55 N. E. 875; *Louisville, etc., R. Co.* v. *Sparks* (1895), 12 Ind. App. 410, 40 N. E. 546; *Niagara Oil Co.* v. *Jackson* (1911), 48 Ind. App. 238, 91 N. E. 825; *Pickens* v. *Cole River Boom Co.* (1909), 66 W. Va. 10, 65 S. E. 865; 24 L. R. A. (N. S.) 354; 8 R. C. L. 483. Where a supplemental complaint, however, is filed, showing the continuation of the wrong, a recovery may be had to the time of its filing. *Niagara Oil Co.* v. *Jackson, supra.*

The sidetrack was built in May, 1910. The action was commenced in May, 1911, and tried in

April, 1912. No supplemental complaint was filed. Appellees to sustain the judgment of $900 are compelled to take into consideration depreciation of rental value for three entire years, viz., 1910, 1911 and 1912, aggregating $360, and to this sum to add $540, as interest on $3,000 for three years, the latter sum being the estimated investment in the lands flooded, the contention being that as appellees lost the use of such investment for the time estimated, the amount of such interest should be taken into consideration as an element of damages. It is apparent that there are two errors in appellees' calculation. It includes periods not allowable, and double damages are thereby claimed.

Certain other questions presented are not determined, as they may not arise on a new trial. For error in assessing the damages, the judgment is reversed, with instructions to sustain the motion for a new trial, with permission to file an amended complaint, and also a supplemental complaint if desired.

NOTE.—Reported in 110 N. E. 230. Liability of railroad company for interference with watercourses by construction of road on land acquired for right of way, see 19 Ann. Cas. 335. See, also, under (1) 40 Cyc 568, 642; (2) 33 Cyc 326; 40 Cyc 573; (3) 40 Cyc 579; (4) 40 Cyc 553, 579; (5) 33 Cyc 326; 40 Cyc 573, 574; (6) 40 Cyc 554; (7) 40 Cyc 682; (8) 33 Cyc 357, 373; 40 Cyc 581, 590.