GWINN *v.* MYERS ET AL.

[No. 29,270. Filed October 17, 1955. Rehearing denied November 18, 1955.]

*Lee B. Fidler, Everett E. McDaniels,* and *John D. Staggenburg,* all of Anderson, for appellant.

*Harold J. Anderson,* of Anderson, for appellees.

ARTERBURN, J.—This case involves a suit against Herbert C. Gwinn, appellant, in which a judgment was rendered against him compelling him to remove a dam constructed by him upon his land at its boundary line with the land of the appellees, Earle M. Myers and Margaret Myers. Earl Boyd, the tenant of Gwinn, was also made a party but no judgment was rendered against

him and he is named as appellee herein. The appellees and the appellant are the owners of adjoining farm lands in Stoney Creek Township in Madison County, Indiana. The water from appellees' land drains across and upon the land of the appellant, Herbert C. Gwinn.

The evidence is uncontradicted that from time immemorial and at least as far back as 1882, there was an open ditch running in a northwesterly direction over and across the lands now owned by the appellees, and onto and across the land now owned by the appellant, Herbert C. Gwinn. The dam involved in this controversy is across the line of that original ditch.

In 1906, by a court proceeding known as the Simmerman Drainage Proceeding in the Superior Court of Madison County, which is the court of original jurisdiction in this action, this ditch was tiled and ordered covered with dirt to a depth of at least two feet over the top of the tile. The specifications in this public drainage proceedings further provided:

"Where the line of the ditch follows an old open ditch, an overflow channel shall be left for flood water. Where the line of ditch changes direct, the tile shall be laid in a regular curve and in such a way to offer the least possible obstruction to the flow of water."

This open ditch, and the later tiled ditch, after crossing the two farms involved here, empties into what is known as Sand Creek. This is an open watercourse running in a southwesterly direction and is approximately one-half mile west of the lands owned by appellees herein.

The appellant here contends that the Simmerman drain has never been reconstructed or repaired or cleaned out by any drainage proceeding; that at the time of the original construction of the drain, "the same was filled in by plowing the dirt back into said ditch and dragging over it until the same was level with the surrounding

land"; after the tile drain was constructed "and up until the present time, being some 46 years, . . . the land involved, and particularly that part existing over said tile drain, has been under cultivation; that it had been plowed across, harrowed, disked, and cultipacked and the crops therein had been rotated"; that in fact there was no longer any watercourse along and over the tile drain.

The evidence shows that the appellees in November, 1952 engaged an earth moving company and with the use of tractors and large earth moving machines removed the dirt from over the top of the then existing tile drain commencing at the partition fence between appellees, Myers', farm and the appellant's, Gwinn's, farm. The appellees admit this work was done and claim that it was a private recleaning, and no dirt was removed so that less than two feet of depth was left over the tile drain.

Appellees claim that the drainage above the line of the tile had in places become clogged such that large pools of water stood in the depressed areas and they were doing merely a recleaning job of the old channel.

The question presented here is whether or not the water flowing in this surface channel over the line of tile is water flowing in a natural watercourse which cannot be dammed by the appellant or is surface water which the lower landowner may block or turn back from his land.

Appellant's contention that a lower riparian owner may protect himself against surface water of the upper owner cannot be questioned. It is likewise true that a landowner may not collect surface water on his land and discharge it on his neighbor. *Watts* v. *Evansville, etc. R. Co.* (1921), 191 Ind. 27, 129 N. E. 315; *Clay* v. *Pittsburg, etc. R. Co.* (1905), 164

Ind. 439, 73 N. E. 904; *Weis* v. *The City of Madison* (1881), 75 Ind. 241; *Newton* v. *Lyons* (1950), 120 Ind. App. 465, 90 N. E. 2d 917; *New Jersey, etc. R. Co.* v. *Tutt* (1907), 168 Ind. 205, 80 N. E. 420.

All water, however, or at least that with which we are concerned here, comes from rain and snow and is originally surface water.

> "An origin from rains and melting snow is by no means an infallible guide in determining that a certain flow of water is mere surface water that may be dammed with impunity." *Vandalia R. Co.* v. *Yeager* (1915), 60 Ind. App. 118, 127, 110 N. E. 230; *Taylor, Administrator* v. *Fickas* (1878), 64 Ind. 167.

Once surface water reaches a natural watercourse it takes on other legal characteristics and among these is that it may not be obstructed or dammed by a lower landowner. *Guynn* v. *Wabash, etc., Light Co.* (1914), 181 Ind. 486, 104 N. E. 849; *Cleveland, etc., R. Co.* v. *Woodbury Glass Co.* (1918) 80 Ind. App. 298, 120 N. E. 426; *Vandalia R. Co.* v. *Yeager, supra.*

Ballantine, in his Law Dictionary, states that to constitute a natural watercourse, the size of the stream is not material nor is it necessary that the water always be found flowing in the channel. 21 L. R. A. 611. However, when surface water begins to flow in a definite direction with banks and forms a channel which is permanent for all practical purposes, it then becomes a watercourse. *Taylor, Administrator* v. *Fickas, supra.*

> "It is also well settled that the water of a natural watercourse does not cease to be a part thereof, and become mere surface water, because it may overflow its ordinary channel, spread out over adjacent low ground, and flow for a distance without a defined channel, before returning to and flowing in its usual confines." *Cleveland, etc. R. Co.* v. *Woodbury Glass Co., supra,* p. 309.

In the case before us we have the establishment of the public drain which in its specifications provides for a watercourse above the line of tile. The case of *Cleveland, etc. R. Co.* v. *Woodbury Glass Co., supra,* is a case almost identical with the one here, except there, the original drainage proceedings fixing a tile drain did not provide for a waterway above the tile. The court there said:

"It appears to be appellant's contention that the establishment and construction of the public tile drain in the bed of the stream, and the obliteration of the greater portion of its bed and banks, as found by the answers to the interrogatories, destroyed its character as a natural watercourse, or made the tile drain the sole channel thereof, so that it was relieved of the duty, which had theretofore existed, of providing a surface passage for the water of such stream through its railroad embankment. We cannot concur in this contention. It has been held by this court that the construction of an artificial drain in a natural watercourse does not change its nature as such.
. . .
"If the natural watercourse still remained after the establishment and construction of the public tile drain as we have held, any report of the commissioners or decree of the court, with reference to the capacity or sufficiency of such drain, made in the proceedings therefor, or the absence therein of any provision for a surface channel for the flow of any portion of the water thereof, could not have the effect of relieving appellant of either its common-law or statutory duty with reference to such watercourse. Nor did the obliteration of the greater portion of the bed and banks of such stream, or the fact that after the construction of said tile drain, no living stream of water remained on the surface of the ground, except at times of heavy rains or floods, as found by the answers to the interrogatories, have such effect." *Cleveland, etc. R. Co.* v. *Woodbury Glass Co., supra,* pp. 307, 308.

Appellants rely heavily upon the case of *Capes* v.

*Barger* (1953), 123 Ind. App. 212, 109 N. E. 2d 725. In that case the trial court refused to enjoin the obstruction of water flowing onto a defendant's land. The court found there that surface water only, was involved. It is true that the situation of the parties and many of the facts in that case are similar to that in the case before us here and also in the case of *Cleveland, etc., R. Co.* v. *Woodbury Glass Co., supra.* However, in the *Capes* case, the trial court under its interpretation of the evidence arrived at the conclusion that the plaintiff had failed to prove that a watercourse was being obstructed. The *Capes* case discusses the *Cleveland, etc., R. Co.* v. *Woodbury Glass Co., supra,* case and distinguishes it.

> "That case holds that the laying of tile pipe in a *natural* watercourse does not change its nature as such and even though it is filled in over the tile and its natural banks obliterated it still remains a watercourse and its waters do not cease to be a part of it, and become mere surface water, because it may overflow and spread out over adjacent low ground and flow for a distance without a defined channel before returning to and flowing in its usual confines. See also *Mitchell* v. *Bain* (1895), 142 Ind. 604, 42 N. E. 230.
>
> "However we find no evidence in the record indicating that the water complained of in this case was overflow from the tile drain involved. All the evidence on the subject tends to prove that it came from the freshets which fell on the appellants' land and never entered the so-called watercourse." *Capes* v. *Barger,* supra, p. 216.

It seems to us there is sufficient evidence in this case for the trial court to find that a channel and watercourse existed along and above the line of tile prior to the recleaning work done by the appellees. Earle Myers, a witness, testified as follows:

"I am well acquainted with the topography of the land from Sand Creek to approximately two or three miles east of Sand Creek. There is a drainage area that extends down through that area. There is a depression there where the water runs. There is a tile ditch that runs through that depression. . . . The depression varies, but it is several inches where the water goes down that channel. You can observe that depression with a naked eye very easily. . . . In heavy rains, excessive water flows over the top of this tile and on the surface . . . ."

Martin A. Milling, a witness, stated:

"I would say that the tile ditch there is not sufficiently large enough to take care of the water in heavy rainfall."

Margaret Myers, a witness, said she remembered the old open ditch and states:

"When they put the tile ditch in I don't remember that it was covered up to the top of the ground. There was a depression along there and you could trace the old bank of the open ditch. At the present time there is still a depression along that tile ditch both on our farm and on Gwinn's farm "

Harold Shaw, a witness, testified:

"I was present at the time when they took some dirt out involving this channel on Mr. Myers' farm. At no place is there less than two foot of dirt over the top of the tile."

Willis Simmerman, a witness, testified:

"That channel has always been there as long as I can remember. When they put the channel in there they followed the old open channel except maybe on this bend there, there was a little cut across that corner to straighten the ditch a little, but otherwise they followed the old channel. . . . Yes, there were banks left along it after they filled in the tile ditch."

There was further testimony that at times the tile

did not and could not carry all the water and the overflow followed the old line of the ditch.

In addition, there was introduced in evidence an aerial photograpic map of the land involved which was made in 1939. This shows a water drainage course along the line of the tile. Counsel stated without contradiction that the trial court also personally viewed the land involved in this litigation by agreement of the parties. If there is any evidence or reasonable inferences therefrom to sustain the finding and decision of the trial court it will not be reversed on appeal. We may consider only the evidence most favorable to the appellees under the specifications of error as here, that the decision of the trial court is not sustained by sufficient evidence and is contrary to law. 4 Lowe's Rev. of Work's Indiana Practice, §61.87.

We find there is evidence to support the finding and decision of the trial court; that there existed, as claimed by the appellees, a watercourse which has been obstructed without right by the appellant.

The judgment of the lower court is affirmed.

Emmert, C. J., Achor, Bobbitt and Landis, JJ., concur.

NOTE.—Reported in 129 N. E. 2d 225.