CENTRAL INDIANA RAILROAD COMPANY *v.* MIKESELL

[No. 20,233. On Motion to Dismiss or Affirm filed December
1, 1965. Decision filed November 10, 1966.]

*Stewart & Austin,* of Anderson, and *Locke, Reynolds, Boyd & Weisell,* of Indianapolis, for appellant.

*Webb, Webb & Smith,* of Noblesville, for appellee.

PER CURIAM—Appellee filed a motion to dismiss or affirm this appeal because of the failure of appellant to have the clerk's seal on the certificate to the transcript.

In the meantime, appellant filed a timely petition for leave to attach verification to the transcript which was granted and the seal has been affixed. Appellee also requested and obtained an enlargement of the time within which to file a brief on the merits and that brief has been filed.

We are aware of some early decisions refusing to consider an unsealed transcript. A more recent tendency has

been, where possible, to decide appellate matters on
■    their merits. *Miller, etc.* v. *Ortman, etc., et al.* (1956),
235 Ind. 641, 650 (note), 136 N. E. 2d 17; *Franklin
et al.* v. *Hunt et al.* (1961), 132 Ind. App. 575, 576, 178 N. E.
2d 464.

Even an objection that the clerk's certificate to the bill of
exceptions is not in the record does not go to the merits
■    of the appeal and is waived by a petition for extension
of time. *Langford* v. *DeArmond* (1965), 137 Ind. App.
439, 209 N. E. 2d 737, Vol. 6, #4 Ind. Dec. 207.

Where the courts have appeared technical in inadvertent
matters there usually has been no effort to correct them.
Here we have witnessed prompt action and no delay to the
proceedings.

The motion also states that pretrial pleadings in this case
were filed and determined in the Hamilton Circuit Court and
that subsequently the venue thereof was changed to the
Marion Circuit Court; that the transcript does not show
authentication of any such pretrial pleadings or record of
the Hamilton Circuit Court. It is not shown nor alleged that
the same are necessary or material to disposition of this
appeal on the merits and we may not and do not so assume.

The petition to dismiss is denied and the motion to affirm
is held in abeyance for opinion on the merits.

OPINION ON THE MERITS

FAULCONER, J.—This appeal is based upon an action brought
by appellee, Dessie Mikesell; and her since deceased husband,
John Milford Mikesell, against appellant, Central Indiana
Railway Company, in the Hamilton Circuit Court, for dam-
ages to real and personal property of appellee. The cause was
later venued to the Marion Circuit Court. The issues were
formed by appellee's amended complaint in two paragraphs
and appellant's answer in general denial, and second para-
graph of answer.

Paragraph I of the amended complaint alleged, in pertinent
part, as follows:

"3. That on or about said 30th day of June 1957, defendant maintained a fifteen feet high embankment which it had previously built and upon which defendant had erected its railroad tracks which said embankment passed in an east-west direction south of plaintiff's property about fifty feet south of plaintiff's said garage.

. . . . .

"8. That plaintiff's [appellee's] aforesaid damages were directly and proximately caused by defendant's [appellant's] careless and negligent acts and omissions, and each of them as follows:

"(a)  Defendant carelessly and negligently constructed, erected and located its aforesaid embankment and tracks in such a place and manner so as to back up and dam up surface water south of said embankment thereby creating a situation where large volumes of water were collected thereby creating a hazardous condition resulting in the embankment collapsing and thereby permitting vast volumes of water to suddenly strike and damage plaintiff's property all of which defendant by reasonable care should have foreseen.

"(b)  Defendant carelessly and negligently located, erected and constructed its aforesaid embankment and tracks so as to create a water damages hazard to plaintiff's property when it rained all of which defendant knew or by exercising due care should have known but which defendant chose to disregard.

"(c)  Defendant carelessly and negligently constructed and erected a 48 inch tile drain in said embankment which was too small to carry the flow of said natural watercourse during periods of rain and too small to carry away surface water all of which defendant knew or should have known by exercise of reasonable care, thereby keeping said water from flowing in its natural manner in aforesaid creek, backing up water south of said embankment allowing vast quantities of water to collect and eventually be discharged on plaintiff's land and home and garage and tool shed as aforesaid.

"(d)  That defendant carelessly and negligently permitted debris and silt to collect in said drain pipe thereby impeding the natural flow of water along said natural watercourse, causing said water to be dammed

up creating a large body of water to be collected which eventually was discharged on plaintiff's property damaging same as hereinabove described."

Paragraph II of the amended complaint sets out and incorporates the acts of negligence alleged in Paragraph I and alleges, in part, "[t]hat by reason of defendant's [appellant's] erection and maintenance of aforesaid embankment and tracks and by reason of defendant's failure to make necessary and proper provisions for the passage of water" a private nuisance was thereby created. To this amended complaint appellant filed a demurrer to Paragraph II thereof, which was overruled.

Appellant then filed an answer in general denial, and a separately filed second paragraph of answer stating, in part, that "the damage as described in plaintiff's complaint was caused solely from an act of God and an unprecendented [unprecedented] downpour of rain within a short length of time, which could not be foreseen nor guarded against by the defendant."

Both, appellant's motion for a directed verdict at the close of appellee's evidence, and appellant's motion for a directed verdict at the close of all the evidence, were overruled. The jury returned a verdict for plaintiff-appellee in the sum of $2,625, plus interest, from the date of the alleged damage. Judgment was entered thereon in the sum of $3,688.13.

Thereafter appellant filed its motion for a new trial, the overruling of which is assigned as error on this appeal.

While appellant's motion for a new trial contains thirty separate grounds, appellant includes only twelve in the argument section of its brief and, therefore, the remaining specifications are waived. Rule 2-17(e)(f), Rules of the Supreme Court, 1964 Revision; *Huff, et al.* v. *Ind. State Hwy. Comm.*, (1958), 238 Ind. 280, 282, 149 N. E. 2d 299; *White, et al.* v. *Lafoon*, (1963), 135 Ind. App. 100, 102, 192 N. E. 2d 474.

Appellant, in the argument section of its brief, sets out five separate propositions. Under Proposition No. 1 appellant states that it is treating together the first five specifications in the motion for a new trial. Specification number three of appellant's motion for a new trial alleges "[m]isconduct of the plaintiff, the prevailing party, by his attorney. . . ." This specification is not discussed by appellant in the argument portion of its brief and is, therefore, waived. Rule 2-17(e) (f), *supra*.

The remaining four of the first five specifications of appellant's motion for a new trial, treated together under Proposition No. 1, as aforesaid, all refer to a remark made by one of plaintiff-appellee's witnesses, upon cross-examination, as follows:

"THE COURT: Read the question back and the partial answer.

"[The official reporter read the question and the partial answer as follows, to-wit:

" 'Q. You testified this morning that it was washed out. A. I testified to that fact. I remember in the testimony that—it was as I remembered in the testimony in—']

"MR. STEWART: The answer is not responsive.

"THE COURT: I think he has a right to explain his answer.

"MR. STEWART: I asked him if he saw the pipe.

"THE COURT: You asked him how he found out about it, too. You are questioning it being hearsay. He has a right to explain.

"MR. STEWART: If it is hearsay, he has no right to testify to it.

"THE COURT: He has a right to tell you. [To the witness.] You may answer.

"A. I started to say in my trial in Greenfield when we beat you in my trial in Greenfield—"

Appellant's motion for a mistrial was overruled, and thereafter the court gave the following admonition to the jury:

"THE COURT: I will strike out his answer. The jury is instructed to disregard his answer because it wasn't responsive to the question and was an improper remark of the witness."

In addition to the above admonition the jury was given the following instruction, tendered by appellant:

## "INSTRUCTION NO. 43

"How a trial involving a different plaintiff came out has no bearing on this case. You are instructed that you must completely disregard the assertion of the witness Robert Mills that he won another case against the defendant. It would not have a bearing on your decision in this case, and you must put such an assertion completely out of your minds, giving each party full and fair consideration and applying carefully and conscientiously the court's instructions on how to determine the verdict in this case."

In *Shepard* v. *Goben* (1895), 142 Ind. 318, at page 321, 39 N. E. 506, it is stated:

"It has been frequently held, in this State, that evidence erroneously admitted may properly be withdrawn by the court. (Citing authorities.)
"In the present case the withdrawal was complete, and the direction to disregard it was explicit, and, under the authorities cited, the error, if any, was fully cured."

In many instances, where the trial court has withdrawn or struck evidence improperly admitted, coupled with an instruction admonishing the jury to disregard it, the admission of such improper evidence has been held to be harmless. 2 I. L. E., Appeals, § 622, p. 643.

We hold that any impropriety or prejudice in the statement made by plaintiff-appellee's witness was cured by the trial court's admonition and subsequent instruction to the jury. *McPhearson* v. *State* (1966), 247 Ind. 579, 219 N. E. 2d 907, 910.

Under Proposition No. 3 appellant contents that "[t]he damages assessed by the jury are excessive" and "[t]he assessment of the amount of recovery is erroneous, being too large."

"It has been held many times by this court that to reverse a judgment on the ground that the damages are excessive, it must appear that the damages assessed were so grossly and outrageously excessive as to induce belief that they were the result of prejudice, partiality or corruption." *Barnes Constr. Co.* v. *Washington Township* (1963), 134 Ind. App. 461, 470-471, 184 N. E. 2d 763 (Transfer denied) ; *Illinois Pipe Line Co.* v. *Coffman* (1934), 98 Ind. App. 419, 427, 188 N. E. 217.

Three separate witnesses placed a value of $800 on plaintiff's garage, and a value of from $250 to $300 on plaintiff's tool shed. Plaintiff testified that she placed a value of $1,500 on her very extensive flower garden, and a value of $20 on a collection of family snapshots. Appellee's son testified to the value of her driveway and fence as being $15 and $150, respectively. All of the above items were shown to have been destroyed or rendered worthless. Appellee's son also estimated the damage to the foundation and basement of appellee's home to have been $300.

From the evidence in the record before us, this court cannot say that the damages were excessive to such degree as to show prejudice or corruption on the part of the jury.

Under Proposition No. 4 in the argument section of its brief, appellant presents the assertion contained in specification number fifteen of its motion for new trial; that the court erred in refusing to give appellant's tendered Instruction No. 3. Appellant, in its brief, sets out three instructions tendered by appellant and refused by the trial court. One of these is appellant's tendered Instruction No. 3. No other instructions are set out in appellant's brief.

As this court stated in the recent case of *Pennsylvania Railroad Co.* v. *Mink* (1966), 138 Ind. App. 311, 212 N. E. 2d 784, at page 793:

"The law in Indiana is clear that where error is claimed in refusing to give an instruction tendered, it is necessary to set forth all of the instructions given." (Citing authorities.)

Rule 2-17 (d), Rules of the Supreme Court of Indiana, 1964 Revision, provides that when error is predicated on the giving or refusal of instructions, the "statement of the record [in appellant's brief] must contain, in addition to the instructions given or refused which are complained of, all the instructions given or tendered which have a bearing upon the question raised." Even though appellant has possibly waived any error in the refusal to give appellant's tendered Instruction No. 3 by failure to comply with Rule 2-17 (d), *supra,* we are of the opinion that the subject-matter of the refused instruction was clearly covered by the giving of Court's Instruction No. 6.

The refusal to give an instruction is not reversible error where the substance thereof is accurately and adequately covered by other instructions given. *N.Y.C. & L. R. Co.* v. *Merc. Nat'l Bk.* (1960), 130 Ind. App. 638, 654, 165 N. E. 2d 382 (Transfer denied) ; *Underwood* v. *Ferguson* (1956), 126 Ind. App. 643, 650, 133 N. E. 2d 573 (Transfer denied). 28 I. L. E., Trial, § 247, pp. 253-255. F. W. & H., Ind. Tr. and App. Pract., § 1510 (5), p. 238.

The remaining propositions, Proposition No. 2 and Proposition No. 5, of the argument section of appellant's brief present and argue the following four specifications of appellant's motion for a new trial.

"Specification 12. Error of law occurring at the trial and excepted to by the defendant when the court overruled defendant's motion for a directed verdict on each paragraph of the plaintiff's amended complaint at the close of plaintiff's evidence."

"Specification 13. Error of law occurring at the trial and excepted to by the defendant when the court overruled defendant's motion for a directed verdict on each paragraph of the plaintiff's amended complaint at the close of all the evidence."

"Specification 20. The verdict of the jury is not sustained by sufficient evidence."

"Specification 21. The verdict of the jury is contrary to law."

Appellant's ultimate contention under each of these specifications, insofar as the first paragraph of complaint is concerned, is that the failure to maintain a larger opening through the railroad embankment was not the proximate cause of appellee's damages, and that under the evidence adduced at the trial this was true as a matter of law.

In support of its basic argument appellant advances four separate assertions. Appellant asserts that the failure to maintain a larger opening through its embankment was not the proximate cause of appellee's damages because, 1) had there been a larger opening under the railroad grade, the water would not have backed up south of the grade, but, instead, the entire amount would have flowed through the grade in such volume as to have caused even more damage than actually did result without such a larger opening; 2) the damage was done not by the breaking of the grade, but by the high water prior to the time the grade broke; 3) the damage was caused by an unprecedented downpour of rain within a short length of time which could not be foreseen or guarded against; and 4) the damage was caused solely from an act of God.

The record discloses the following facts most favorable to appellee:

Appellee and her now deceased husband lived in Westfield, Indiana. Their home was located on a lot about 70 feet wide and 125-150 feet deep. The lot fronted on Park Street and ended in the rear at the railroad right-of-way. Along the back of their lot the railroad maintained an embankment or grade approximately 15 feet high which supported railroad tracks running in an east-west direction. The railroad maintained two openings for the passage of water through the

grade. Directly to the south of appellee's house was located a four-foot round tile conduit. A three-foot corrugated tile pipe was 350 feet west of the four-foot tile. A small drainage ditch ran along the north side of the grade, east of appellee's home; and this was an 18-inch drain.

The ground level of the Mikesell home was at an elevation of 876.8 feet, and the level of the first floor was 880.07 feet. The top of the railroad embankment was 883.23 feet or 3.16 feet above the floor level of the home and 6.43 feet above the ground level. The Mikesell backyard sloped downward to where the bottom of the four-foot pipe was at a level 868.7 feet, or 14.53 feet below the top of the grade. The top of Park Street in front of the Mikesell property was at a level of 877.1 feet, or virtually the same as the ground level of the house.

Located immediately northeast of the four-foot railroad grade drain pipe, and under Park Street, was a 6.3 x 3.8 feet corrugated metal pipe to allow for the passage of water under Park Street. The top of this pipe was located 5.6 feet below the level of Park Street. The bottom of the three-foot corrugated tile pipe passing through the grade west of the four-foot pipe was at an elevation of 873.6 feet.

The four-foot round tile and the three-foot corrugated tile totaled 20 square feet of opening through the railroad grade, there being no other openings. The corrugated metal pipe under Park Street had a 19.5 square foot opening.

Appellant argues, hypothetically, that even had there been larger openings through its grade so as to have had more than 20 square feet of opening, appellees damage would have still been suffered due to the inability of the greater amount of water to pass through the 19.5 square foot metal pipe beneath Park Street and a consequent flooding of the Mikesell land.

Appellant also argues, as to actual occurrence, that appellee's damage was due to high water prior to the break. Both of these arguments fail in light of evidence demonstrating the

destructive force of the water released when the embankment gave way. The height of the water which came across the Mikesell's backyard was estimated as being over three feet when it reached the house, and four to six feet high as it came through the break in appellant's embankment. Two witnesses testified that the water released by the embankment continued across Park Street with force sufficient to wash away several six by eight foot frame hog houses located 100 feet north of Park Street, and they were "rammed in some of the Westfield Gas facilities at the Union Street bridge" located a block east and a block and a half north from the railroad. Appellee, in her conditional examination, stated that the water released by the break "took a big chair . . . out in front, a big heavy chair." To further distinguish both appellant's hypothetical and alleged actual high water damage situations from a situation in which water is suddenly released in quantity, is the following testimony elicited, upon cross-examination, of appellee's witness, Mr. Allan Weihe, a graduate civil engineer:

"Q. Then, what you are saying is that the damage was not because we didn't have a sufficient opening under here, but because the water couldn't get away from Park Street, isn't it?

"A. No, I'm not saying that.

"Q. That is true, isn't it: that the damage was caused because the water couldn't get away here instead of because we couldn't get it under the grade?

"A. Obviously, the water would never have gotten as high as it did if there had been a 72' opening.

"Q. It wouldn't have gone over the top?

"A. And it wouldn't have had that one moment of spurt."

The foregoing evidence clearly provides a sufficient basis for a finding that a larger opening would not have resulted in damage to appellee's property, and that appellant's hypothetical maintenance of a larger opening is not synoymous

with what actually occurred as far as concerns damage to appellee's property.

As to specific refutation of the assertion that high water prior to the break was the actual cause of appellee's damages, there was testimony at the trial that the water was just up to the botom of the foundation prior to the break, and was not over Park Street; that water "had been over the flower garden once or twice before, but it had never hurt it, but whenever this embankment broke it washed that cinders and gravel, brick and rocks and everything else in there," and that the flowers were completely destroyed after the break; that the walls of the basement "cracked when the water came up there"; that the garage, tool shed, driveway and fence were all washed away by the force of the water; and that several tons of brick, cinders and gravel remained as residue on the Mikesell's land.

The above evidence, in our opinion, sufficiently supports a finding that appellee's damages resulted in fact from the sudden release of the great volume of water backed up behind the embankment and not from the water which had arisen prior to the washout.

Appellant contends that appellee's damages were caused by an unprecedented downpour of rain within a short length of time which could be neither foreseen nor guarded against.

> "The Indiana courts regard foreseeability of injury as an essential element or fundamental test of proximate cause, and hold that negligence will not be deemed to have been the proximate cause of an injury so as to impose liability therefor unless the consequence was one which, in the light of attending circumstances, ought, could, or should reasonably have been foreseen or anticipated." 21 I. L. E., Negligence, § 65, p. 325.

Even an unprecedented downpour may result in liability, and the mere fact that a rain or flood is unprecedented does not in and of itself determine the issue.

In *Zollman* v. *Baltimore, etc. R. Co.* (1919), 70 Ind. App. 395, 121 N. E. 135, where damages were sought due to the breaking of a railroad grade and the sudden release ■ upon appellant's land of water from the flood of 1913, the court, in striking down an instruction, at pages 410-411 of 70 Ind. App., pages 140-141 of 121 N. E., said:

"In such a case as is presented here the defendant may be liable although the flood that concurred with some act of his was unusual and extraordinary in nature. In such a case the defendant may be held liable in damages not only where the flood was usual and ordinary in nature, but also where it may be designated as unusual and extraordinary, provided its occurrence might have been anticipated by the exercise of reasonable skill and foresight. *Vandalia R. Co.* v. *Yeager, supra.* [(1915), 60 Ind. App. 118, 110 N. E. 230.]

•   •   •   •

"The nature of the flood as usual or unusual, ordinary or extraordinary, is important only as an element in determining whether or not it should have been anticipated.

"As we have indicated, we do not believe that the mere fact that the flood was unprecedented can be said, as a matter of law, to form the basis of an escape from liability."

In the case of *Watts* v. *Evansville, etc. R. Co.* (1921), 191 Ind. 27, at page 50, 129 N. E. 315, at page 322, involving a railroad embankment washout, is found the following language:

"It is the position of appellees that the negligence thus shown was not the proximate cause of the injury to appellant's lands as described. . . . The reason advanced to support this position is that the injury of which appellant complains was caused solely by the unprecedented flood of March, 1913.";

and, further, at pages 52-53 of 191 Ind., page 323 of 129 N. E.:

"If, in erecting and maintaining the structure in question, appellees had exercised due care to provide against all dangers which might have been reasonably expected to arise from all conditions that could have been foreseen in the

exercise of reasonable care and prudence, it would have been free from negligence and could not have been held liable for any injury resulting from an unforeseen danger; but if it failed to use reasonable care to provide against dangers likely to result from conditions which might have been reasonably foreseen it was guilty of negligence. If, then, an unforeseen danger arose due to conditions which could not have been anticipated and caused damage to the property of appellant, the liability of appellees must be settled by determining whether or not the negligent failure of appellees to provide against the dangers which could have been reasonably anticipated was the proximate cause of the danger which actually arose by reason of a condition that could not have been reasonably foreseen. If due care in providing against dangers which could have been reasonably anticipated would have prevented or avoided the unforeseen danger which actually arose and caused the injury, then, the negligence in failing to use such care must be regarded as the proximate cause of the injury if acting alone, and if acting in conjunction with another force, such as the act of God, it must be deemed a concurring proximate cause. On the other hand, if the observance of due care in providing against known dangers would not have prevented or turned aside the danger which arose and produced the injury, then, the failure to observe such care could not be regarded as a proximate cause of the injury."

The general rule, stated in terms specific to situations such as the present one, is that if the rainfall or flood was of such a nature that, in view of all the facts, the exercise of reasonable skill and foresight should have led to its being anticipated, there may be liability. If it was of such a nature that it could not reasonably have been expected to occur, proper care, diligence and foresight being exercised, there is no liability. *Zollman* v. *Baltimore, etc. R. Co., supra* (1919), 70 Ind. App. 395, 411, 121 N. E. 135; *Evansville, etc. R. Co.* v. *Scott* (1917), 67 Ind. App. 121, 149, 114 N. E. 649.

The issue of proximate cause, like negligence, is for the jury where its determination depends on a state of facts from which different minds might reasonably draw different inferences or conclusions, but where the facts are undisputed and where only a single inference or

conclusion can be drawn therefrom, proximate cause is a matter of law to be determined by the court. In general, questions of proximate cause are for the court only in plain and undisputable cases, and if there is any reasonable doubt as to proximate cause, it is a question of fact to be determined by the jury. *Baltimore & Ohio R. Co.* v. *Patrick, Admtrx.* (1960), 131 Ind. App. 105, 117, 166 N. E. 2d 654 (Transfer denied); *Kempf* v. *Himsel* (1951), 121 Ind. App. 488, 497, 98 N. E. 2d 200 (Transfer denied). 21 I. L. E., Negligence, § 204, pp. 428-429.

The evidence as to the probability of the amount of rain which fell, and as to the amount which actually did fall, is conflicting. One witness testified that from four o'clock on Thursday evening until four o'clock on Friday morning, four inches of rain fell; and, further, that from four o'clock on Thursday evening until six o'clock on Friday morning, five inches fell, that until eight o'clock on Friday morning, 5.55-inches fell, and until eleven o'clock on Friday morning, 5.7 inches fell. Another witness testified that from four o'clock on Thursday evening until six o'clock on Friday morning, 5.35-inches fell, and that 5.35-inches in a 14-hour period "would be a frequency of 100 years." A third witness testified that 5.75-inches fell over a 24-hour period, and that "the major effect of the storm was approximately $3\frac{3}{4}''$ of rain within a period of 5 hours." This witness further stated that 3.75-inches in four and one-half hours would be "roughly a 25-year frequency—a little bit less," and that four inches in eight hours would be "approximately 20—less than 20-year frequency."

The evidence is also in conflict as to what, under sound engineering practices and principles, would constitute an adequate and sufficient opening to allow for the passage of water through the railroad embankment. One witness testified that he would make no change in the size of the openings, whereas another witness stated that he would regard $82\frac{1}{2}$ square feet as being a minimum.

Under the conflicting evidence the issue of proximate cause was properly submitted to the jury for their determination and we are of the opinion that we cannot say, as a matter of law, that reasonable men could only have arrived at a conclusion different than that reached by the jury.

Appellant asserts that appellee's damages were caused solely from an an act of God. As stated by this court in *Evansville, etc. R. Co.* v. *Scott, supra* (1917), 67 Ind. App. 121, at page 148, 114 N. E. 649, at page 658,

"[B]efore the 'act of God' can be made available as a defense there must be an entire exclusion of human agency from the cause that produced the injury, and that an occurrence that is produced partially by the inter vention of human agency is not an 'act of God' within the meaning of the law." *Zollman* v. *Baltimore, etc. R. Co., supra* (1919), 70 Ind. App. 395, 415, 121 N. E. 135; *Watts* v. *Evansville, etc. R. Co., supra* (1921), 191 Ind. 27, 51, 129 N. E. 315.

We feel that the evidence was clearly sufficient to support a finding that human negligence was at least a concurrent cause of appellee's damages and, hence, appellant's argument of an "act of God" is without merit.

It is our considered opinion that appellant's specifications numbered 12, 13, 20 and 21, in its motion for a new trial fail to demonstrate reversible error.

It is proper to give the jury a peremptory instruction to find for the defendant " 'when there is a total absence of evidence or legitimate inference in favor of the plaintiff upon an essential issue; or where the evidence is without conflict and is susceptible of but one inference and that inference is in favor of the defendant.' " *State Farm Life Insurance Co.* v. *Spidel* (1964), 246 Ind. 458, 202 N. E. 2d 886, 888-889.

Similarly, "[w]e will reverse a verdict and judgment thereon as contrary to law only if the evidence is without conflict and can lead to but one conclusion, and the trial court has reached an opposite conclusion." *Jackson,*

*Admrx.* v. *Stellingwerf* (1965), 138 Ind. App. 65, 210 N. E. 2d 49, 50 (Transfer denied).

Likewise, under an assignment of error that the verdict is not sustained by sufficient evidence, "[i]f there is any evidence of probative value to support the findings of the trial court, it is the duty of this court to affirm." *Haley* v. *Williams, Trustee etc., et al.* (1955), 125 Ind. App. 377, 380, 381, 123 N. E. 2d 921.

A review of the evidence in this case reveals ample evidence of probative value to support the verdict of the jury and the action of the trial court in overruling appellant's motions for a directed verdict, and that the verdict was not contrary to law.

On September 17, 1965, appellee filed herein motion to dismiss or affirm. On December 1, 1965, appellee's petition to dismiss was denied and the motion to affirm held in abeyance for opinion on the merits. Appellee's motion to affirm is now overruled.

Finding no reversible error, the judgment of the trial court should be affirmed.

Judgment affirmed.

Carson and Prime, JJ., concur.

Wickens, P.J., not participating.

NOTE.—Opinion on Motion to Discuss or Affirm. Reported in 211 N. E. 2d 794, Decision Reported in 221 N. E. 2d 192.